UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

SEKISUI AMERICA CORPORATION and SEKISUI MEDICAL CO. LTD.,

Plaintiffs,

v.

RICHARD HART and MARIE LOUISE TRUDEL-HART,

Defendants.

12 Civ. 3479 (SAS)

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS**

SULLIVAN & WORCESTER LLP
Franklin B. Velie
Jonathan G. Kortmansky
Siobhan Briley
1633 Broadway, 32nd Floor
New York, New York 10019
Telephone: (212) 660-3000
Facsimile: (212) 660-3001

*Attorneys for Defendants*
*Richard Hart and Marie Louise Trudel-Hart*

# TABLE OF CONTENTS


TABLE OF AUTHORITIES ........ ii

PRELIMINARY STATEMENT ........ 1

THE ALLEGATIONS OF THE COMPLAINT ........ 3

ARGUMENT ........ 7

I. Plaintiffs Fail to State a Claim for Breach of Contract. ........ 8

II. Plaintiffs Fail to State a Claim for Fraud ........ 10

CONCLUSION ........ 14

# TABLE OF AUTHORITIES

*Cases*

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ..... passim

*ATSI Comm'ns, Inc. v. Shaar Fund Ltd.*,
493 F.3d 87 (2d Cir. 2007) ..... 3

*Berman v. Sugo LLC*,
580 F. Supp. 2d 191 (S.D.N.Y. 2008) ..... 5

*Chambers v. Time Warner, Inc.*,
282 F.3d 147 (2d Cir. 2002) ..... 5

*Cortec Indus., Inc. v. Sum Holding L.P.*,
949 F.2d 42 (2d Cir. 1991) ..... 3, 5

*Eternity Global Master Fund Ltd. v. Morgan Guar. Trust Co. of N.Y.*,
375 F.3d 168 (2d Cir. 2004) ..... 8

*HSH Nordbank AG v. UBS AG*,
95 A.D.3d 185, 941 N.Y.S.2d 59 (1st Dep't 2012) ..... 14

*Int'l Audiotext Network, Inc. v. AT&T Co.*,
62 F.3d 69 (2d Cir. 1995) ..... 3, 4

*LeVista, Inc. v. Ranbaxy Pharm., Inc.*,
450 F. App'x 54, 2011 WL 6117276 (2d Cir. Dec. 9, 2011) ..... 8, 10

*Premium Mortg. Corp. v. Equifax, Inc.*,
583 F.3d 103 (2d Cir. 2009) ..... 8, 11, 12

*Rosenblum v. Glogoff*,
-- N.Y.S.2d --, 2012 WL 2094363 (1st Dep't June 12, 2012) ..... 12

*Shields v. Citytrust Bancorp, Inc.*,
25 F.3d 1124 (2d Cir. 1994) ..... 8, 11, 12

*Sidamonidze v. Kay*,
304 A.D.2d 415, 757 N.Y.S.2d 560 (1st Dep't 2003) ..... 8, 12

*S.Q.K.F.C., Inc. v. Bell Atlantic Tricon Leasing Corp.*,
84 F.3d 629 (2d Cir. 1996) ..... 11

*Telecom Int'l Am., Ltd. v. AT&T Corp.*,
280 F.3d 175 (2d Cir. 2001) ..... 8, 13

*Statutes*

Fed. R. Civ. P. 8(a) ..........8

Fed. R. Civ. P. 9(b) .......... passim

Fed. R. Civ. P. 12(b)(6)..........1

Defendants Marie Louise Trudel-Hart and Richard Hart ("Defendants" or the "Harts") respectfully submit this Memorandum of Law in support of their motion to dismiss the Complaint of Sekisui America Corporation ("SAC") and Sekisui Medical Co., Inc. ("SMD") (collectively, the "Plaintiffs") pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

**PRELIMINARY STATEMENT**

Plaintiffs bring this action for breach of representations and warranties in a contract for the sale of American Diagnostica, Inc. ("ADI"), and for fraud. To support their claims, Plaintiffs allege that more than a year after they bought and assumed control of ADI, they discovered a number of problems at ADI. Plaintiffs fail to allege, however, that the problems existed before they bought the company. In view of the facts pled in the Complaint and found in the documents referenced in the Complaint, it is plain that the problems found by Plaintiffs arose on Plaintiffs' watch. It is also plain that Plaintiffs were not defrauded. They allege no misstatement or omission of fact, and in the contract they expressly disclaim reliance on the statements they now claim give rise to their fraud claim. Plaintiffs thus fail to plead the necessary elements of the claims or to establish a plausible basis for them.

ADI was a "mom and pop" company principally owned by the Harts. On March 5, 2009, Plaintiffs, two wholly-owned subsidiaries of the Japanese multi-national corporation Sekisui Chemical Co., entered into a stock purchase agreement (the "SPA") to purchase ADI from the Harts. The sale closed on April 20, 2009 (the "Closing Date"), and Plaintiffs took control of the company. Three years later, Plaintiffs now claim that based on problems they allegedly discovered at ADI in 2010, the representations and warranties in the SPA were not true when made in 2009, and that Plaintiffs were duped into purchasing ADI. Neither of Plaintiffs' claims can survive scrutiny.

In order to establish a claim for breach, Plaintiffs must plead facts which establish that the purported breaches existed on the Closing Date. The Complaint fails to meet this threshold pleading requirement. Moreover, the Complaint's conclusory allegations do not plausibly suggest that the problems complained of came with ADI when Plaintiffs bought it. The more likely explanation is that the problems occurred on Plaintiffs' watch. Plaintiffs conducted two separate and extensive due diligence reviews before acquiring ADI. The first was during the five month period prior to executing the SPA. If this due diligence review was unsatisfactory, Plaintiffs had no obligation to execute the SPA. The second was during the period between the execution of the SPA and the Closing Date. If this second due diligence review was unsatisfactory, Plaintiffs had no obligation to close the acquisition of ADI. Plaintiffs' Complaint does not allege that either of these reviews revealed any problems at ADI, and indeed, Plaintiffs executed the SPA and closed the acquisition. In September 2009, *i.e.*, five months following Plaintiffs' assumption of control, Plaintiffs conducted yet another review, this time an internal audit of ADI. That audit also found no problems. Given two extensive pre-closing due diligence reviews and a post-closing audit, all of which revealed no problems at ADI, the most plausible explanation for the problems found by Plaintiffs in 2010 is that they were problems created by Plaintiffs.

Plaintiffs' fraud claim is similarly defective. To establish their claim for fraud, Plaintiffs must plead facts which show both that the Harts made misrepresentations of or omitted material facts and Plaintiffs' reliance. Plaintiffs cannot meet this burden. Plaintiffs claim that they were duped by the Harts into purchasing ADI because of certain statements regarding ADI's product FEMTELLE in a "Confidential Memorandum" provided to Plaintiffs in October 2008, *i.e.*, five months prior to the date the SPA was executed. Plaintiffs allege that the memorandum contained

financial projections regarding FEMTELLE and a statement that "management believes that introduction of FEMTELLE into the U.S. market will drive substantial future revenue growth for this product." These statements of opinion cannot be the basis of a fraud claim. In addition, the SPA included an express disclaimer of reliance on the projections and forecasts in the Confidential Memorandum. For this reason alone, Plaintiffs fraud claim must be dismissed. Plaintiffs' fraud claim also fails because it does not meet the pleading requirements of Rule 9(b) and, in any event, it is duplicative of the breach of contract claim.

**THE ALLEGATIONS OF THE COMPLAINT**

**Background**

ADI, a company engaged in the discovery, manufacture and marketing of novel medical diagnostic products, was founded by the Harts in 1982. Compl. ¶¶ 1,11. Prior to the sale to Plaintiffs, the Harts owned 95.94% of ADI. Compl. ¶ 1. On December 10, 2008, Plaintiffs and the Harts executed a letter of intent (the "LOI"), Compl. ¶ 17,[1] and its corresponding exclusivity agreement ("Exclusivity Agreement" or "Excl. Agmt."). Following the execution of those documents, Plaintiffs conducted due diligence. Compl. ¶18. The parameters of the due diligence, referenced on page 2 of the LOI, are set forth in the Exclusivity Agreement. Excl. Agmt. ¶ 4.[2] The Exclusivity Agreement specifically provides that Plaintiffs had no obligation to

---

[1] Because the LOI is referenced in the Complaint, the Complaint is "deemed to include" it. *Int'l Audiotext Network, Inc. v. AT&T Co.*, 62 F.3d 69, 72 (2d Cir. 1995). A copy of the LOI, and its amendment, is attached as Exhibit A to the Declaration of Jonathan G. Kortmansky (the "Kortmansky Dec."), dated July 3, 2012.

[2] The Exclusivity Agreement is attached as Exhibit B to the Kortmansky Dec. On a motion to dismiss, the Court may consider "documents possessed by or known to the plaintiff and upon which [the plaintiff] relied in bringing the suit." *ATSI Comm'ns, Inc. v. Shaar Fund Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007); *see also Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 47 (2d Cir. 1991), *cert. denied*, 506 U.S. 960 (1992) ("when a plaintiff chooses not to attach to the complaint or incorporate by reference a [document] upon which it solely relies and which is integral to the complaint, the defendant may produce the [document] when attacking the

purchase ADI, Excl. Agmt. ¶ 7, and further provides that during the period between the execution of the Exclusivity Agreement and the execution of a stock purchase agreement, Plaintiffs "will have" access to:

> all books, records, other data and information, facilities, properties, assets, suppliers, key personnel, officers, directors, independent accountants, environmental reports and consultants and legal counsel of the Company and its subsidiaries, as requested by [Plaintiffs] for purposes of evaluating the Acquisition. Excl. Agmt. ¶ 4.

The Complaint does not allege that the due diligence revealed any problems with ADI, and on March 5, 2009, Plaintiffs executed the SPA. Compl. ¶ 2.[3]

The SPA gave Plaintiffs the right to conduct a second round of due diligence, and the right to terminate the SPA if the due diligence proved unsatisfactory. Section 6.14 of the SPA provides that ADI and the Harts shall give plaintiffs:

> complete access . . . from the date hereof to the Closing Date, to the Company's and its Subsidiaries' officers, employees, agents, properties, books and records (which shall include access for conducting environmental due diligence, examinations and investigations of the Company and the Company Leased Property), and shall furnish the Purchaser with all financial, operating, and other data and information as the Purchaser may reasonably request. SPA § 6.14.

Section 7.2(a) of the SPA provides that Plaintiffs only became obligated to purchase ADI if, after this due diligence, they were satisfied that all of the Harts' and ADI's representations and warranties in the SPA were true and correct in all material respects. Section 7.2(a) provides in relevant part:

---

complaint for its failure to state a claim, because plaintiff should not so easily be allowed to escape the consequences of its own failure"); *Int'l Audiotext*, 62 F.3d at 72 (in deciding the defendant's motion to dismiss, court may take into consideration document relied on in, but not attached to, Complaint without converting proceeding to one for summary judgment).

[3] The SPA was attached as Exhibit A to the Complaint. For the Court's convenience, a copy of the pages containing the provisions cited herein is attached as Exhibit C to the Kortmansky Dec.

> The obligation of the Purchaser to consummate the Acquisition . . . is subject to the satisfaction (or waiver in writing by the Purchaser in its sole discretion) of the following conditions: (a) Representations and Warranties. Each of the Shareholders' and the Company's representations and warranties contained in Articles III and IV of this Agreement shall be true and correct in all material respects . . . on and as of the date hereof and on and as of the Closing . . . . SPA § 7.2(a).

The Complaint does not contain a single allegation that Plaintiffs' due diligence provided any basis for concluding that Defendants' representations and warranties were not true, and on April 20, 2009, Plaintiffs acquired ADI for $25.5 million. Compl. ¶ 24, 51.[4]

Pursuant to the SPA, "following the Closing," Plaintiffs had "the sole and exclusive control and discretion over the direction and operation of the Business." SPA § 2.6(d). In September 2009, having operated the business of ADI for five months, Plaintiffs conducted an internal audit. That internal audit revealed no problems at ADI. AQSOL Rpt. § IV(B)(4), p. 7.[5] In May 2010, more than a year after Plaintiffs assumed control of ADI, Plaintiffs conducted yet another audit. This time they retained Advanced Quality Solutions, Inc. ("AQSOL"), an external consultant, to conduct the review. AQSOL conducted the review during the period May 17-20,

[4] The SPA gave Plaintiffs another 90 days after Closing to examine ADI's finances and prepare an unaudited statement of its working capital. SPA § 2.5(a). Plaintiffs allege no disagreement with Defendants regarding ADI's working capital. *See* SPA § 2.5(b) (allowing Defendants to object if they disagreed with Plaintiffs' statement of working capital).

[5] The AQSOL Report ("AQSOL Rpt.") is referenced in paragraph 41 of the Complaint (although not by name) and is attached as Exhibit D to the Kortmansky Dec. Although Plaintiffs did not append the AQSOL Report to their Complaint, the Complaint draws almost all of its allegations in support of the breach of contract claim from the AQSOL Report. *Compare* Compl. ¶¶ 42(a)-(m) *with* AQSOL Rpt., pp. 6-17. As noted *supra* note 2, a document "upon which [the plaintiff] solely relies and which is integral to the complaint" may be considered on a motion to dismiss. *Cortec Indus., Inc.*, 949 F.2d at 47. Plaintiffs clearly had "actual notice of [the AQSOL Report] and relied upon [it] in bringing suit[.]" *Berman v. Sugo LLC*, 580 F. Supp. 2d 191, 200 (S.D.N.Y. 2008). Because the "[C]omplaint 'relies heavily upon its terms and effect,'" the AQSOL Report is "integral" to and may be incorporated into the Complaint. *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152 (2d Cir. 2002) (quoting *Int'l Audiotext Network, Inc. v. AT&T Co.*, 62 F.3d 69, 72 (2d Cir. 1995) (internal quotation marks omitted)).

2010, but was directed by Plaintiffs. AQSOL Rpt., p. 1. That review, for the first time, revealed the alleged problems at ADI.

**Breach of Contract Allegations**

Plaintiffs premise their claim for breach of contract on alleged breaches of four provisions in the SPA: that ADI was, and since January 1, 2006 had been, in compliance with the FDA's regulations governing medical device manufacturers ("FDA Regulations"); that the facilities ADI used were "sufficient to conduct" its business activities; that ADI's products were not defective; and that ADI's relationships with each of its top 20 customers were "good commercial working relationships." Compl. ¶¶ 2, 42, 51; SPA §§ 4.11, 4.12, 4.14, 4.26. Defendants covenanted that these representations and warranties were "true and correct in all material respects" both when the SPA was executed and on the Closing Date. SPA §§ 2.3, 7.2(a).

The breaches asserted by Plaintiffs are set forth in paragraph 42 of the Complaint, and are basically a regurgitation of the purported findings in the AQSOL Report. *Cf.* Compl. ¶ 42 and AQSOL Rpt., pp. 6-17.[6] Neither the Complaint nor the AQSOL Report, however, states that any of the conditions or situations upon which Plaintiffs now assert their claim for breach existed at or prior to the Closing Date, April 20, 2009.

---

[6] Paragraphs 42(a)-(n) of the Complaint set forth the allegations supporting Plaintiffs' claim for breach of contract. Almost all of these—¶¶ 42(a)-(g) and (i)-(k)—are paraphrased recitations of the findings in the AQSOL Report. The allegations in ¶¶ 42(a)-(b) of the Complaint can be found on page 9 of the AQSOL Rpt. § IV(E)(1), p. 9. Those in ¶ 42(c) can be found on pages 9-10 of the Report, at § IV(E)(2). Those in ¶ 42(d) can be found on page 12, at § IV(F)(1). Those in ¶ 42(e) can be found on pages 14-15, at §§ IV(I)(1)-(2). Those in ¶ 42(f) can be found on page 8, at § IV(C)(1). Those in ¶ 42(g) can be found on page 12, at § IV(E)(6). Those in ¶ 42(i) can be found on pages 10-11, at § IV(E)(3). Those in ¶42(k) can be found on pages 13-14, in § IV(G). Those in ¶¶ 42(l)-(m) can be found on pages 13-14, in § IV(G)(1).

**Fraud Allegations**

Plaintiffs base their fraud claim on the purported grounds that Defendants made misrepresentations and omissions with respect to FEMTELLE, a breast cancer test the Harts had developed but that was not yet approved by the FDA or available for sale in the United States. *See* Compl. ¶ 29. Although Plaintiffs allege that the primary motivation for acquiring ADI was the prospect of marketing FEMTELLE in the United States, *id.*, only six percent ($1.5 million) of the $25.5 million guaranteed purchase price for ADI was attributed to FEMTELLE, Compl. ¶ 16, SPA §§ 2.6(b) and (c).

The core of Plaintiffs' fraud claim is the allegation that Defendants "grossly overstated FEMTELLE's potential value." Compl. ¶ 29. This allegation appears to rely primarily on three statements, all contained in a Confidential Memorandum dated August 2008 and provided to Plaintiffs in October 2008: (1) financial projections regarding potential sales of FEMTELLE in the United States if it received FDA approval, (Compl. ¶ 15); (2) an opinion that "management believes that introduction of FEMTELLE into the U.S. market will drive substantial future revenue growth for this product" (Compl. ¶ 14); and (3) an opinion that ADI expected to receive FDA approval to market FEMTELLE ("Section 510(k) clearance" or "510(k) clearance") by the fourth quarter of FY 2009.[7] In § 4.29 of the SPA, however, Plaintiffs expressly disclaimed reliance on these projections and opinions:

> Except as otherwise expressly set forth in this Article IV (including the Schedules attached hereto), neither the [Harts] nor the Company makes any representation or

[7] Plaintiffs also allege that the SPA "contained language presuming that the 510(k) would be filed" in 2009 and that it was expected that FEMTELLE would receive FDA approval in 2009. Compl. ¶ 31. The SPA contains no assurances by Defendants regarding the success of the Section 510(k) clearance application, nor does it require that the Harts make any submission to the FDA. *See* SPA § 2.6. In fact, the parties specifically contemplated that 510(k) clearance might not be obtained in 2009, and included a provision in the SPA that Plaintiffs would pay the Harts an additional $2 million if such approval were obtained. SPA § 2.6(b).

> warranty, express or implied, at law or in equity, in respect of the Company or any of its assets, liabilities or operations. The representations and warranties set forth in this Article IV supersede and replace all prior statements, representations, projections, forecasts, warranties and other understandings (whether written or oral) that may have been previously given or made by the [Harts] and the Company that may have related in any way to the subject matter of the Agreement including the projections set forth in the Confidential Memorandum relating to the Company dated August 2008/October 22, 2008. SPA § 4.29.

Plaintiffs also fail to allege any facts to demonstrate that the statements in the Confidential Memorandum were false, or known to be false, when made.

**ARGUMENT**

A claim for relief under Rule 8(a) must contain "well-pleaded facts" sufficient to allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged[.]" *See Ashcroft v. Iqbal*, 556 U.S. 662, 677 (2009); *LeVista, Inc. v. Ranbaxy Pharm., Inc.*, 450 F. App'x 54, 2011 WL 6117276, at *1 (2d Cir. Dec. 9, 2011) (citing *Iqbal*). To show that Defendants breached the representations and warranties in the SPA, Plaintiffs must allege facts sufficient to establish that the representations and warranties were not true at or before Closing. *See Eternity Global Master Fund Ltd. v. Morgan Guar. Trust Co. of N.Y.*, 375 F.3d 168, 177 (2d Cir. 2004) (setting forth elements of claim for breach). Plaintiffs make no such showing. Their claim for breach therefore fails and should be dismissed.

Plaintiffs' fraud claim also fails because Plaintiffs fail to allege any misrepresentation or omission on which they relied, let alone plead the circumstances that constitute fraud with the particularity required by Rule 9(b). *See Premium Mortg. Corp. v. Equifax, Inc.*, 583 F.3d 103, 108 (2d Cir. 2009) (setting forth elements of fraud claim); *Shields v. Citytrust Bancorp, Inc.*, 25 F.3d 1124, 1128 (2d Cir. 1994) (citing Fed. R. Civ. P. 9(b)). In addition, the alleged statements complained of are no more than opinions as to future events, and as such, cannot be fraudulent. *See Sidamonidze v. Kay*, 304 A.D.2d 415, 416, 757 N.Y.S.2d 560, 560 (1st Dep't 2003). Finally,

Plaintiffs' claim is based entirely on matters addressed in the SPA and is thus barred under New York law. *See Telecom Int'l Am., Ltd. v. AT&T Corp.*, 280 F.3d 175, 196 (2d Cir. 2001).

## I. Plaintiffs Fail to State a Claim for Breach of Contract

Plaintiffs have offered this Court no basis to allow their claim for breach. "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 678. A claim fails to establish facial plausibility if either of two things is true: the complaint is devoid of well-pleaded facts supporting the plaintiff's right to the claimed relief (*id.* at 677); or there are "more likely explanations" for the facts pled than that the defendant engaged in the claimed misconduct (*id.* at 681). Plaintiffs' claim fails in both ways. Not one of the facts alleged in their Complaint suggests that the representations and warranties in the SPA were false *when Defendants made them*. In addition, the facts alleged point to a far "more likely explanation[]" for the conditions Plaintiffs found at ADI in 2010—they arose after Plaintiffs took sole and exclusive control of ADI.

The Complaint recites a multitude of conditions discovered at ADI in May 2010 that allegedly failed to comply with FDA Regulations. Compl. ¶¶ 42(a)-(m); *see also* AQSOL Rpt., pp. 6-17. It then asserts that these conditions constitute "breaches in Defendants' representations and warranties." Compl. ¶ 42. Missing, however, is the essential linchpin: facts that show that the conditions alleged were there before the Closing Date. *See Iqbal*, 556 U.S. at 678. For example,[8] paragraph 42(c) alleges that ADI's environmental controls were not in compliance with FDA requirements regarding "clean rooms," but the Complaint fails to plead facts to establish that this condition, purportedly discovered in 2010, existed when the Harts were in

[8] Each of Plaintiffs breach allegations is similarly defective. Rather than recite the defects for each, Defendants provide certain examples to highlight the deficiencies.

control of ADI's operations. Likewise, paragraphs 42(d) and (l) of the Complaint allege that Product 822 (which Plaintiffs also define in the Complaint as IMUBIND plasma PAI-1 ELISA) was found to contain raw materials that were unfit for sale or expired. Compl. ¶ 42(d), (l). The Complaint, however, pleads no facts that establish that these conditions, which were discovered in 2010, existed on the Closing Date. Finally, Plaintiffs allege that "ADI's corrective and preventive actions (CAPA) procedure" was inadequate. Compl. ¶ 42(k). CAPA procedure is followed in connection with a recall of a product. AQSOL Rpt. § IV(G)(1), p. 13. Plaintiffs fail to plead any facts that establish that CAPA procedures were not followed when the Harts owned ADI. Indeed, the only recall referenced in the Complaint is a recall of Product 822, which Plaintiffs admit they initiated. Compl. ¶ 42(m). Plaintiffs' claim for breach is nothing more than "an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.*

The "more likely explanation[]" by far is that the alleged conditions arose at ADI after September 2009. *Iqbal*, 556 U.S. at 681. Prior to the Closing Date, Plaintiffs conducted two separate and extensive due diligence reviews. The first was during the five month period between the execution of the Exclusivity Agreement and the execution of the SPA. Excl. Agmt. ¶ 4; Compl. ¶¶ 17-18. Plaintiffs had no obligation to execute the SPA, and if this due diligence review revealed any problems of the type set forth in the Complaint, Plaintiffs could just walk away. Excl. Agmt. ¶¶ 7. Plaintiffs do not allege that the pre-SPA due diligence revealed any problems, and Plaintiffs executed the SPA. The second due diligence review was during the period between the execution of the SPA and the Closing Date. SPA § 6.14. If this second due diligence caused Plaintiffs to believe that ADI was not in full compliance with the representations and warranties in the SPA, Plaintiffs could walk away from the acquisition. SPA

§ 7.2(a). Plaintiffs do not allege that this due diligence review revealed any violations of the representations and warranties, and Plaintiffs acquired ADI on April 20, 2009.

Following the Closing Date, Plaintiffs acquired full control of ADI's business. SPA § 2.6(d). In September 2009, *i.e.*, five months following Plaintiffs' assumption of control, Plaintiffs conducted an internal audit of ADI. AQSOL Rpt. § IV(B)(4), p. 7. That audit did not identify any problems with ADI. *Id.* Given two due diligence reviews and a post-closing audit that revealed none of the issues alleged, the "more likely explanation[]" for the conditions found in May 2010 is that Plaintiffs caused them after taking sole and exclusive control of ADI, not that they were present before Closing. *Iqbal*, 556 U.S. at 681. Indeed, the last internal audit conducted pre-closing, while the Harts were in control, similarly found no deficiencies of the kind alleged. AQSOL Rpt. § IV(B)(4), p. 7. The allegations in Plaintiffs' Complaint do not "plausibly establish" that Defendants breached the representations and warranties in the SPA. *Id.* Plaintiffs' breach of contract claim should therefore be dismissed.

## II. Plaintiffs Fail to State a Claim for Fraud

"To successfully plead a common law fraud claim, plaintiff must allege a 'material, false representation, an intent to defraud thereby, and reasonable reliance on the representation, causing damage to the plaintiff.'" *S.Q.K.F.C., Inc. v. Bell Atlantic Tricon Leasing Corp.*, 84 F.3d 629, 633 (2d Cir. 1996) (quoting *Katara v. D.E. Jones Commodities*, 835 F.2d 966, 970-71 (2d Cir. 1987)); *see also Premium Mortg. Corp. v. Equifax, Inc.*, 583 F.3d 103, 108 (2d Cir. 2009) (elements of fraud are a misrepresentation or material omission of fact made for the purpose of inducing the defendant to rely on it, justifiable reliance, and injury). In addition, Plaintiffs must plead "the circumstances constituting the fraud . . . with particularity." Fed. R. Civ. P. 9(b). "Particularity" requires that Plaintiffs "(1) specify the statements that [they] contend[] were fraudulent, (2) identify the speaker, (3) state where and when the statements were

made, and (4) explain why the statements were fraudulent." *Shields v. Citytrust Bancorp, Inc.*, 25 F.3d 1124, 1128 (2d Cir. 1994) (citing Rule 9(b)). Plaintiffs' fraud claim fails in all respects.

First, Plaintiffs fail to allege any misrepresentation or omission of fact on which they relied. *See Premium Mortg. Corp.*, 583 F.3d at 108. Plaintiffs' principal fraud allegation is that Defendants "grossly overstated FEMTELLE's potential value." Compl. ¶ 29. This allegation relies on three statements contained in a Confidential Memorandum dated August 2008 and provided to Plaintiffs in October 2008: (1) financial projections regarding potential sales for FEMTELLE if it received FDA approval, (Compl. ¶ 15); (2) an opinion that "management believes that introduction of FEMTELLE into the U.S. market will drive substantial future revenue growth for this product," (Compl. ¶ 14); and (3) an opinion that ADI expected to receive 510(k) clearance from the FDA by the fourth quarter of FY 2009, (*id.*). Plaintiffs' reliance on the projections and opinions in the Confidential Memorandum is fatal to their claim. In executing the SPA, Plaintiffs expressly disclaimed reliance on "all prior statements, representations, projections, forecasts, warranties and other understandings . . . including the projections set forth in the Confidential Memorandum . . . dated August 2008/October 22, 2008." SPA § 4.29. Under New York law, "where the parties expressly disclaim reliance on the particular misrepresentations [alleged], contrary parol[] evidence is barred." *Rosenblum v. Glogoff*, -- N.Y.S.2d --, 2012 WL 2094363, at *1 (1st Dep't June 12, 2012) (citing *Citibank v. Plapinger*, 66 N.Y.2d 90, 94, 495 N.Y.S.2d 309, 311 (1985). Moreover, each of the alleged statements is a statement of opinion, and it is black-letter law in New York that "[o]pinions of value or future expectations" do not support a cause of action for fraud. *Sidamonidze v. Kay*, 304 A.D.2d 415, 416, 757 N.Y.S.2d 560, 560 (1st Dep't 2003).

Second, even if the alleged statements in the Confidential Memorandum were statements of fact on which Plaintiffs could rely, Plaintiffs have failed to plead their fraud claim in conformance with Rule 9(b). *See* Fed. R. Civ. P. 9(b). In particular, Plaintiffs fail to allege any facts to demonstrate that the statements were false and known to be false when made in October 2008. *Shields*, 25 F.3d at 1128 (2d Cir. 1994) (Rule 9(b) requires that plaintiffs allege facts sufficient to demonstrate why statements are fraudulent).

Third, where fraud asserted alongside breach of contract is not based on matters collateral to the contract, it must be dismissed. *Telecom Int'l Am., Ltd. v. AT&T Corp.*, 280 F.3d 175, 196 (2d Cir. 2001) (quoting *Sudul v. Computer Outsourcing Servs.*, 868 F. Supp. 59, 62 (S.D.N.Y. 1994) (internal quotation marks omitted)). Plaintiffs's fraud claim suffers from this fatal defect. Plaintiffs allege that Defendants "grossly overstated FEMTELLE's potential value[,]" and that Defendants knew the application for FDA clearance "had little chance of success." Compl. ¶ 29, 33. The SPA addresses these matters. As already stated, § 4.29 specifically addresses the projections in the Confidential Memorandum. In addition, § 2.6 addresses projections regarding FEMTELLE's potential value and approval of the Section 510(k) clearance application. Section 2.6(a) makes clear that FEMTELLE's potential future revenue was not part of the purchase price. Instead, § 2.6(a) provides for annual "Revenue-Based Payments" to Defendants in 2010-2013 based on projected FEMTELLE revenue. If the projected revenue targets are not met, Plaintiffs are not obligated to make the payments. Section 2.6(b) accounts for the fact that Section 510(k) approval was not part of the purchase price and in the event that FDA approval was received on or before November 30, 2009, Plaintiffs would pay Defendants an additional $2 million.

Plaintiffs also allege that Defendants prevented them from learning "material information" during the due diligence period. Compl. ¶¶ 18-21 (alleging that accounting staff's

understanding of financial matters was not "detailed," that KPMG, at some point, had not received key documents and awaited answers to some questions, and that ADI's "primary contact" with the FDA was told to "stay away" from KPMG). These matters, too, are addressed in the SPA. *See* SPA § 6.14. By proceeding to Closing, Plaintiffs conceded that Defendants had kept their promise to afford Plaintiffs "complete access" to all their requested information, personnel and documents about ADI. Indeed, under the terms of the SPA, the sale would not have closed unless Defendants had *already performed* as to these matters.[9]

All of Plaintiffs allegations in support of its fraud claim "concern[] the performance of the contract itself." *HSH Nordbank AG v. UBS AG*, 95 A.D.3d 185, 941 N.Y.S.2d 59, 74 (1st Dep't 2012). Plaintiffs' claim for fraud is thus "duplicative of the claim for breach of contract" and should be dismissed. *Id.*

[9] For this reason, even absent § 4.29, Plaintiffs cannot plausibly establish reliance on any statements purportedly made by Defendant about ADI and its products outside of the contract. Plaintiffs' assertion that Defendants refused access to material information is flatly contradicted by the terms of the SPA. In light of § 6.14, Plaintiffs have not pled facts sufficient to "nudge [their] claims … across the line from conceivable to plausible." *Iqbal*, 556 U.S. at 680.

## CONCLUSION

For the foregoing reasons, Defendants respectfully request that Plaintiffs' Complaint be dismissed in its entirety. Pursuant to this Court's motion rules and procedures, Defendants certify to the Court that a pre-motion letter was sent to Plaintiffs on June 28, 2012, to which Plaintiffs responded on June 29, 2012.

Dated: New York, New York
July 3, 2012

SULLIVAN & WORCESTER LLP

By: /s/Jonathan G. Kortmansky
Franklin B. Velie
Jonathan G Kortmansky
Siobhan Briley
1633 Broadway, 32nd Floor
New York, NY 10019
(212) 660-3000

*Attorneys for Defendants Richard Hart and Marie Louise Trudel-Hart*