UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------ X
                           :

**SEKISUI AMERICA CORPORATION**  :
**and SEKISUI MEDICAL CO., LTD.,**  :
                           :

          **Plaintiffs,**     :

                           :        **OPINION AND ORDER**

      - against -       :

                           :         **12 Civ. 3479 (SAS)**

**RICHARD HART and MARIE LOUISE**  :
**TRUDEL-HART,**                  :

                           :

          **Defendants.**    :
------------------------------------------------------ X

**SHIRA A. SCHEINDLIN, U.S.D.J.:**

## I. INTRODUCTION

        Richard Hart and Marie Louise Trudel-Hart bring this motion to dismiss claims for breach of contract and fraud by Sekisui America Corporation ("SAC") and Sekisui Medical Co., Ltd. ("SMD," together "Sekisui") under Rule 12(b)(6) of the Federal Rules of Civil Procedure. For the following reasons, the Harts' motion to dismiss is granted in part and denied in part.

## II. BACKGROUND

        SAC is a Delaware corporation with its principal place of business in

New Jersey.[1]  SMD is a sister company of SAC with its principal place of business

in Japan.[2]  Hart and Trudel-Hart are Connecticut residents.[3]  Hart founded

American Diagnostics, Inc., ("ADI") a company engaged in the discovery,

manufacture and marketing of novel medical diagnostic products,[4] in 1982.[5]  The

Harts owned 95.94% of ADI.[6]  Hart served as the President of ADI and oversaw

the operation of the company.[7]

In 2007, the Harts sought a buyer for ADI.[8]  In September 2008,

ADI's advisory company, Crosstree Capital Partners, contacted SMD to determine

SMD's interest in acquiring ADI.[9]  In October 2008, ADI sent SMD a Confidential

Memorandum containing information about ADI's financial situation and

---

[1]      *See* Complaint ("Compl.") ¶ 7.

[2]      *See id.* ¶ 8.

[3]      *See id.* ¶¶ 9-10.

[4]      *See id.* ¶ 1.

[5]      *See id.* ¶ 11.

[6]      *See id.*

[7]      *See id.*

[8]      *See id.*

[9]      *See id.* ¶ 12.

products.[10]  Specifically, the memorandum contained information regarding the development of a new breast cancer diagnostic known as FEMTELLE.[11]

On December 10, 2008, SMD sent the Harts a Letter of Intent expressing its interest in acquiring ADI, including FEMTELLE, for $25,500,000.[12] SMD and the Harts executed the Letter of Intent on December 10, 2008.[13]  SMD then retained KPMG to conduct due diligence of ADI.[14]  The due diligence revealed that Hart had fired ADI's Chief Financial Officer as well as two junior accountants in the week before ADI sent SMD the Confidential Memorandum.[15] SAC later learned that Hart had ordered ADI's primary contact with the FDA to "stay away" from KPMG during this period.[16]

On March 5, 2009, SAC executed a Stock Purchase Agreement ("SPA") with the Harts and the other shareholders of ADI to purchase the shares of

---

[10]     *See id.* ¶¶ 13-14.

[11]     *See id.* ¶¶ 14-15.

[12]     *See* Letter of Intent, Ex. A to 7/3/12 Declaration of Jonathan G. Kortmansky, defendant's counsel, in Support of Defendants' Motion to Dismiss ("Kortmansky Dec."), at 1.

[13]     *See id.*

[14]     *See* Compl. ¶ 18.

[15]     *See id.*

[16]     *Id.* ¶ 21.

ADI for $25,500,000.[17]  Hart remained the CEO of ADI following the

transaction.[18]  On March 15, 2009, ADI submitted a 510(k) premarket notification

for FEMTELLE to the FDA.[19]  The FDA requested additional information

regarding studies and device history on May 27, 2009.[20]  SAC then learned that

ADI had submitted a FEMTELLE 510(k) in 2007 based on the same studies and

tests that SAC relied on in its 2009 submission.[21]  The FDA deemed the

submission withdrawn on May 19, 2008, because ADI had provided insufficient

information.[22]  Sekisui now alleges that the Harts fraudulently induced them into

executing the SPA by failing to notify them of the previous submission and that the

Harts breached the warranties and representations in the SPA.[23]

Jurisdiction is premised on diversity of citizenship.[24]  Venue in this

district is proper because the SPA that defendants allegedly breached provides that

---

[17]    *See id.* ¶ 23.

[18]    *See id.* ¶ 36.

[19]    *See id*. ¶ 32.

[20]    *See id.* ¶ 34.

[21]    *See id.* ¶ 33.

[22]    *See id.*

[23]    *See id. ¶¶* 51, 55.

[24]    *See* 28 U.S.C. § 1332.

all actions arising out of that agreement must be litigated only in a state or federal court located in New York County[25] and because the dispute arises out of the transaction of business in this district.[26]  As this matter is here on diversity of citizenship, the substantive law of New York applies.[27]

## III.  LEGAL STANDARD

In deciding a motion to dismiss pursuant to Rule 12(b)(6), the court must "accept[ ] all factual allegations in the complaint as true, and draw[ ] all reasonable inferences in the plaintiff's favor."[28]  The court evaluates the sufficiency of a complaint under the "two-pronged approach" advocated by the Supreme Court in *Ashcroft v. Iqbal*.[29]  First, "[a] court 'can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth.'"[30]  "Threadbare recitals of the elements of a cause of action,

---

[25]    *See* Compl. ¶ 6.

[26]    *See* 28 U.S.C. § 1391(b)(2).

[27]    *See Erie R.R. Co. v. Tompkins*, 304 U.S. 64 (1938).

[28]    *Wilson v. Merrill Lynch & Co.*, 671 F.3d 120, 128 (2d Cir. 2011) (quotation marks omitted).

[29]    556 U.S. 662, 679 (2009).

[30]    *Hayden v. Paterson*, 594 F.3d 150, 161 (2d Cir. 2010) (quoting *Iqbal*, 556 U.S. at 664).  *Accord Ruston v. Town Bd. for Town of Skaneateles*, 610 F.3d 55, 59 (2d Cir. 2010).

supported by mere conclusory statements, do not suffice" to withstand a motion to dismiss.[31]  Second, "[w]hen there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief."[32]

To survive a Rule 12(b)(6) motion to dismiss, the allegations in the complaint must meet a standard of "plausibility."[33]  A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[34]  Plausibility "is not akin to a probability requirement;" rather, plausibility requires "more than a sheer possibility that a defendant has acted unlawfully."[35]

## IV.  APPLICABLE LAW

### A.  Breach of Contract

Under New York law, a party asserting a breach of contract must allege:  "(1) a contract; (2) performance by the party seeking recovery; (3) breach

---

[31]     *Iqbal*, 556 U.S. at 663 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

[32]     *Id.* at 670.  *Accord Kiobel v. Royal Dutch Petroleum Co.*, 621 F.3d 111, 124 (2d Cir. 2010).

[33]     *Twombly*, 550 U.S. at 564.

[34]     *Iqbal*, 556 U.S. at 678 (quotation marks omitted).

[35]     *Id.* (quotation marks omitted).

of the contract by the other party; and (4) damages attributable to the breach."[36]

## B. Fraud

### 1. Particularity

A claim for fraud under New York law requires a showing of: "(1) a misrepresentation or material omission of fact which was false and known to be false by defendant, (2) made for the purpose of inducing the other party to rely upon it, (3) justifiable reliance of the other party on the misrepresentation or material omission, and (4) injury."[37] "Where sophisticated businessmen engaged in major transactions enjoy access to critical information but fail to take advantage of that access, New York courts are particularly disinclined to entertain claims of justifiable reliance."[38] "An omission is actionable only in the context of a duty to disclose."[39]

---

[36]   *Dozier v. Deutsche Bank Trust Co. Americas*, No. 09 Civ. 9065, 2011 WL 4058100, at *3 (S.D.N.Y. Sept. 1, 2011).

[37]   *Lama Holding Co. v. Smith Barney, Inc.*, 88 N.Y.2d 413, 421 (1996). *Accord Manning v. Utilities Mut. Ins. Co.*, 254 F.3d 387, 400 (2d Cir. 2001) (same); *Bridgestone/Firestone, Inc. v. Recovery Credit Servs., Inc.*, 98 F.3d 13, 19 (2d Cir. 1996) (same).

[38]   *Merrill Lynch & Co., Inc. v. Allegheny Energy, Inc.*, 382 F. Supp. 2d 411, 416-417 (S.D.N.Y. 2003) (citing *Grumman Allied Indus., Inc. v. Rohr Indus., Inc.*, 748 F.2d 729, 737 (2d Cir. 1984)).

[39]   *Century Pac., Inc. v. Hilton Hotels Corp.*, No. 03 Civ. 8258, 2004 WL 868211, at *9 (S.D.N.Y. Apr. 21, 2004) (citing *United States v. Autuori*, 212 F.3d

Federal Rule of Civil Procedure 9(b) provides that: "In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." To satisfy the particularity requirement, "the complaint must: '(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent.'"[40] Thus, "allegations [of fraud] must be supported by the pleadings of specific facts tending to show that, at the time the defendant made the asserted representations and promises, it never intended to honor its stated intentions."[41] "Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally."[42]

### 2. Overlapping Claims

"It is black letter law in New York that a claim for common law fraud will not lie if the claim is duplicative of a claim for breach of contract."[43] "[A]

---

105, 119 (2d Cir. 2000).

[40]   *Lerner v. Fleet Bank N.A.*, 459 F.3d 273, 290 (2d Cir. 2006) (quotation marks omitted).

[41]   *Carlucci v. Owens–Corning Fiberglas Corp.*, 646 F. Supp. 1486, 1491 (E.D.N.Y. 1986).

[42]   Fed. R. Civ. P. 9(b).

[43]   *Clifton v. Vista Computer Servs., LLC*, No. 01 Civ. 10206, 2002 WL 1585550, at *2 (S.D.N.Y. July 16, 2002) (citing *Bridgestone/Firestone*, 98 F.3d at 19–20). *Accord Clark–Fitzpatrick, Inc. v. Long Island R.R. Co.*, 70 N.Y.2d 382,

duplicative fraud claim may not be brought alongside a breach of contract claim unless the plaintiff distinguishes the two by (1) demonstrating a legal duty separate from the duty to perform under the contract, (2) demonstrating a fraudulent misrepresentation collateral or extraneous to the contract, or (3) seeking special damages caused by the misrepresentation and unrecoverable as contract damages."[44]  "A general request for punitive damages is not enough to differentiate the damages recoverable for fraud from those sought for breach of contract."[45]

### 3. Disclaimers of Representation

"Where a party specifically disclaims reliance upon a particular representation in a contract, that party cannot, in a subsequent action for common law fraud, claim it was fraudulently induced to enter into the contract by the very

---

389 (1987) ("It is a well-established principle that a simple breach of contract is not to be considered a tort unless a legal duty independent of the contract itself has been violated.").

[44]     *Bibeault v. Advanced Health Corp.*, No. 97 Civ. 6026, 2002 WL 24305, at *5 (S.D.N.Y. Jan. 8, 2002) (under New York law, a fraud claim associated with a breach of contract can be sustained, and tort damages recovered, only when plaintiffs can demonstrate a fraudulent misrepresentation "collateral" or "extraneous" to the contract) (citing *Bridgestone/Firestone*, 98 F.3d at 20)).

[45]     *Allen v. Cox*, No. 10 Civ. 7118, 2011 WL 2436705, at *4 (S.D.N.Y. June 16, 2011) (citing *Krantz v. Chateau Stores of Can., Ltd.*, 683 N.Y.S.2d 24 (1st Dep't 1998)).

representation it has disclaimed reliance upon."[46]  However, courts enforce

disclaimers only if they track 'the substance of the alleged misrepresentation.'[47]

### C.  Leave to Replead

Rule 15(a)(2) of the Federal Rules of Civil Procedure provides that

other than amendments as a matter of right, "a party may amend its pleading only

with the opposing party's written consent or with the court's leave."  Although

"[t]he Court should freely give leave when justice so requires," it is "within the

sound discretion of the district court to grant or deny leave to amend."[48]  "When a

motion to dismiss is granted, the usual practice is to grant leave to amend the

complaint."[49]  "However, it is well established that leave to amend a complaint

need not be granted when amendment would be futile."[50]

## V.  DISCUSSION

---

[46]  *Harsco Corp. v. Segui*, 91 F.3d 337, 345 (2d Cir. 1996) (citing *Danann Realty Corp. v. Harris*, 157 N.E.2d 597 (1959).  *Accord Century Pac., Inc. v. Hilton Hotels Corp.*, 528 F. Supp. 2d 206, 229 (S.D.N.Y. 2007).

[47]  *Caiola v. Citibank*, 295 F.3d 312, 330 (2d Cir. 2002) (quoting *Grumman Allied Indus., Inc. v. Rohr Indus., Inc.*, 748 F.2d 729, 735 (2d Cir. 1984)).

[48]  *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 200 (2d Cir. 2007).

[49]  *Hayden v. County of Nassau*, 180 F.3d 42, 53 (2d Cir. 1999).

[50]  *Ellis v. Chao*, 336 F.3d 114, 127 (2d Cir. 2003).

### A.  Breach of Contract

Sekisui alleges that the Harts breached four promises in the SPA.[51]

*First*, Sekisui argues that the Harts breached a promise that ADI complied with relevant federal regulations.  Paragraph 4.14(a) provides that:  "The Company and its Subsidiaries are, and have since January 1, 2006, been, in compliance in all material respects with all applicable Laws."[52]  Paragraph 4.14(d) of the SPA also represents that ADI's products comply with federal regulations:  "The Products are not misbranded or adulterated within the meaning of the Federal Food, Drug, and Cosmetic Act, 21 U.S.C. § 321, et seq."[53]

*Second*, Sekisui alleges that the Harts breached a representation that ADI's facilities were sufficient to conduct its business activities.  Paragraph 4.12 provides that:

> The buildings, plants, leasehold improvements, structures, facilities, equipment and other property and assets which are owned, leased or used by the Company or any of its Subsidiaries are (a) sufficient to conduct, and the Non-core Assets are not necessary to conduct, the Business as currently conducted and currently proposed to be conducted, (b) conform in all material respects to all Laws and Permits relating to their construction, use and operation and (c) except as set forth on Schedule 4.12(c), are in good operating condition, ordinary wear and tear

---

[51]    *See* Compl.  ¶¶ 42-51.

[52]    SPA, Ex. C to Kortmansky Dec., at 28.

[53]    *Id.*

11

excluded.[54]

Paragraph 4.14(c) provides that:

[t]he buildings, plants, leasehold improvements, structures, facilities, equipment and other property and assets which are owned, leased, or used by the company are (a) sufficient to conduct, and the Non-core assets are not necessary to conduct, the Business as currently conducted and currently proposed to be conducted, (B) conform in all material respects to all Laws and Permits relating to their construction, use and operation and (c) except as set forth on Schedule 4.12(c), are in good operating condition, ordinary wear and tear excluded.[55]

*Third*, Sekisui alleges that the Harts breached paragraph 4.11 of the

SPA, which contains representations and warranties regarding ADI's products:

There are no express warranties outstanding with respect to any products currently or formerly manufactured, sold, distributed, provided, shipped or licensed, or any services rendered (collectively, "Products"), by the Company or any of its Subsidiaries, beyond that set forth in the standard conditions of sale or service, copies of which are included in Schedule 4.11. Each Product has been in conformity in all material aspects with all applicable contractual commitments and warranties. There are no material design, manufacturing or other defects, latent or otherwise, with respect to any Products . . .[56]

*Fourth*, Sekisui alleges that the Harts breached a promise that ADI

maintained good commercial working relationships with its key customers.

Paragraph 4.26 of the SPA represents that:

---

[54]   *Id.* at 25.

[55]   *Id.* at 29.

[56]   *Id.*

(a) [T]he relationships of each of the Company and its Subsidiaries with each Key Customer are good commercial working relationships; (b) no Key Customer has cancelled or otherwise terminated or, to the Knowledge of the Company, threatened to cancel or otherwise terminate, its relationship with the Company or any of its subsidiaries, in each case, by written or, to the Knowledge of the Company, other notification; (c) neither the Company, other notice from any Key Customer to the effect that any such Key Customer intends to terminate, renegotiate, materially reduce or otherwise materially and adversely modify its relationship with the Company or any of its Subsidiaries; and (d) neither the Company nor any of its Subsidiaries have been involved in any material dispute with a Key Customer.[57]

Sekisui states plausible claims for breach of all four promises. Sekisui alleges that specific ADI products and facilities, including its In-Vitro Diagnostic products and its Clean Room, did not comply with federal regulations.[58] Sekisui also alleges that ADI's facilities were not sufficient to conduct its business because, inter alia, its storage areas were insufficient, its Clean Room did not have an adequate air supply, and manufacturing areas were exposed to air ducts.[59] Sekisui alleges that the Harts breached paragraph 4.11 because ADI's Product 822 was defective as a result of the fact that ADI manufactured it using expired raw

---

[57]   *Id.* at 41. *See also* Compl. ¶¶ 2, 42, 51; Memorandum of Law in Support of Defendants' Motion to Dismiss ("Def. Mem.") at 6.

[58]   *See* Compl. ¶¶ 42(a)-(k).

[59]   *See id.* ¶ 42(i).

materials.[60]  ADI recalled Product 822 after SAC acquired the company because the product provided false readings and risked misdiagnosis.[61]  Finally, Sekisui alleges that the Harts breached paragraph 4.26 because ADI had preexisting problems with key customers that caused a decline in business after SAC acquired the company.[62]

In response, the Harts argue that Sekisui fails to state a claim because the record does not show that the alleged problems existed at the time of ADI's acquisition.  Therefore, the Harts argue, the problems more likely arose after SAC purchased ADI.[63]  The Harts support this argument by noting that SAC did not discover the alleged breaches until 2010.[64]

Accepting the Harts' argument would require the court to move beyond a plausibility analysis and engage in probabilistic determinations.  SAC's discovery that ADI's products and facilities did not comply with federal regulations in 2010 gives rise to an inference that ADI's products and facilities did not comply with federal regulations in 2009.  That ADI's In-Vitro Diagnostic

---

[60]     *See id.* ¶ 42(l).

[61]     *See id.* ¶ 42(m).

[62]     *See id.* ¶ 42(n).

[63]     *See* Def. Mem. at 10.

[64]     *See id.* at 9.

products were not properly validated in 2010 gives rise to an inference that they lacked appropriate validation prior to that time.  To infer that SAC invalidated the products in 2010 would require the Court to question SAC's well-pleaded factual allegations rather than accept them as true.  Moreover, that Hart continued running the day-to-day operations of ADI after SAC's acquisition lends credence to the claim that the alleged breaches predate SAC's ownership.[65]

The Harts also argue that the Exclusivity Agreement and the AQSOL Report attached to their motion to dismiss as Exhibits B and D are integral to Sekisui's Complaint and demonstrate that Sekisui has failed to state a claim for breach.[66]  "In considering a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6), a district court may consider the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint."[67]  While the court may consider a document that is not incorporated by reference "where the complaint 'relies heavily upon its terms and

---

[65]    *See* Compl. ¶ 36.

[66]    *See* Def. Mem. at 4-6.

[67]    *DiFolco v. MSNBC Cable LLC*, 622 F.3d 104, 111 (2d Cir. 2010) (citing *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002)).

effect,' thereby rendering the document 'integral' to the complaint,"[68] "it must also be clear that there exist no material disputed issues of fact regarding the relevance of the document."[69]  I decline to consider these at this stage in the proceedings because Sekisui does not explicitly reference them in the Complaint and disputes their relevance.[70]

## B.  Fraud

Sekisui alleges that the Harts fraudulently misrepresented and omitted material facts in order to induce Sekisui to purchase ADI.[71]  Specifically, Sekisui argues that the Harts made false representations regarding the marketability of FEMTELLE in the Confidential Memorandum  and failed to disclose numerous defects at the ADI facility.[72]  Sekisui also alleges that the Harts' failure to disclose the failed 2007 FEMTELLE premarket notification constituted a fraudulent

---

[68]    *Id.* (quoting *Mangiafico v. Blumenthal*, 471 F.3d 391, 398 (2d Cir. 2006)).  *Accord Global Network Commc'ns, Inc. v. City of N.Y.*, 458 F.3d 150, 156 (2d Cir. 2006).

[69]    *Faulkner v. Beer*, 463 F.3d 130, 134 (2d Cir. 2006).

[70]    *See* Plaintiffs' Memorandum of Law in Opposition to Defendants' Motion to Dismiss at 12.

[71]    *See* Compl. ¶¶ 55-58.

[72]    *See id.* ¶ 55.

omission.[73]  SAC argues that the Harts concealed the alleged problems by firing key employees and telling ADI's FDA contact to "stay away" during due diligence.[74]

### 1.  The Disclaimers in the SPA Bar Sekisui's Fraudulent Misrepresentation Claim

The Harts argue that the SPA's disclaimer of representations bars Sekisui's fraud claim.[75]  Paragraph 4.29 provides:

> Except as otherwise expressly set forth in this Article IV (including the Schedules attached hereto), neither the Principal Shareholders nor the Company makes any representation or warranty, express or implied, at law or in equity, in respect of the Company or any of its assets, liabilities or operations.  The representations and warranties in this Article IV supersede and replace all prior statements, representations, projections, forecasts, warranties and other understandings (whether written or oral) that may have been previously given or made by the Principal Shareholders or the Company that may have related in any way to the subject matter of this Agreement including the projections set forth in the Confidential Memorandum.[76]

This language expressly disclaims the projections set forth in the Confidential Memorandum, which form the basis of Sekisui's fraudulent

---

[73]  *See id.* ¶¶ 55-56.

[74]  *Id.* ¶ 55.

[75]  *See* Def. Mem. at 12.

[76]  SPA at 29.

misrepresentation claim.  Aside from the projections contained in the Confidential

Memorandum, Sekisui does not allege any affirmative misrepresentations upon

which it relied as an inducement to purchase ADI.  The disclaimer in paragraph

4.29 renders Sekisui's reliance upon the Confidential Memorandum unreasonable

and bars Sekisui's fraudulent misrepresentation claim.

### 2.  Sekisui's Fraudulent Omission Claim Fails Rule 9(b)'s Heightened Pleading Requirement

Sekisui also alleges that the Harts' failure to disclose the failed 2007

FEMTELLE 510(k) premarket notification submission constitutes a fraudulent

omission.[77]  This claim fails as well.  *First*, Sekisui has not pled the existence of a

legally cognizable duty to disclose.[78]  *Second*, Sekisui's claim centers on the Harts'

alleged statement to ADI's FDA contact to "stay away" during due diligence.

While Sekisui pleads both the identity of the speaker and to whom the statement

---

[77]     *See* Compl. ¶¶ 55-56.

[78]     *See Century Pac.*, 528 F. Supp. 2d at 232 ("a duty to disclose
information during a business transaction arises in three situations: (1) where a
party 'has made a partial or ambiguous statement,' as a party 'cannot give only half
of the truth;' (2) where a party has a fiduciary duty to another; or (3) where a party
has superior knowledge that is not available to the other party and the party with
superior knowledge knows that the other party is acting on the basis of mistaken
knowledge.") (quoting *Brass v. American Film Techs., Inc.*, 987 F.2d 142, 150 (2d
Cir. 1993)).  While Sekisui can likely demonstrate that the Harts made an
ambiguous statement or possessed superior knowledge regarding FEMTELLE,
Sekisui cannot demonstrate that the Harts owed them a fiduciary duty as no
fiduciary relationship existed between the parties.

was made, Sekisui does not identify where and when the statement was made.

This statement — even if true — constitutes neither a false statement nor an

omission.[79]  Nor does the Complaint explain why the firing of key employees prior

to due diligence constituted a fraudulent representation or omission.[80]  *Third*,

Sekisui, a sophisticated commercial entity, conducted a round of due diligence

before entering into the SPA, and had the right to conduct a second round of due

diligence with complete access to ADI's records and employees.  New York courts

are reluctant to find fraud in such cases.[81]

### 3.  Sekisui's Fraud Claim Duplicates Its Breach of Contract Claim

Sekisui also fails to state a claim for fraud because the SPA addresses

both FEMTELLE premarket approval and SAC's access to ADI's records.

Paragraph 2.6(a) provides for "Earn-Out" payments from SAC to the Harts for

---

[79]    *See Harsco*, 91 F.3d at 347-48 (finding that the absence of key employees during due diligence and a refusal to provide requested documents as part of due diligence did not state a plausible claim for fraud).

[80]    *See id.*

[81]    *See Merrill Lynch*, 382 F. Supp. 2d at 416-17.  *See also Century Pac.*, 528 F. Supp. 2d at 229 ("[t]he second situation where a merger clause will defeat a claim of reasonable reliance is where the clause 'was included in a multi-million dollar transaction that was executed following negotiations between sophisticated business people and a fraud defense is inconsistent with other specific recitals in the contract'") (quoting *Emergent Capital Inv. Mgmt., LLC v. Stonepath Group, Inc.*, 165 F. Supp. 2d 615, 622 (S.D.N.Y. 2001)).

2010-2013 based on FEMTELLE revenue.[82]  Paragraph 2.6(b) provides for a $2,000,000 payment from SAC to the Harts "[i]n the event that the FDA grants FEMTELLE Clearance on or before November 30, 2009."[83]  The SPA limits SAC's losses in the event that FEMTELLE does not obtain FDA approval because in that event the Harts do not receive compensation based on FEMTELLE's revenues.[84]

Furthermore, the SPA places the burden of marketing FEMTELLE on SAC.  Under paragraph 2.6(d)(i)(A), SAC agrees to "undertake commercially reasonable efforts to market and sell, or to cause the marketing and sale of, the FEMTELLE Product, including providing commercially reasonable personnel, technical and financial resources therefor and submitting to the FDA . . . submissions and filings."[85]  Having expressly assumed the risk of a marketing failure in the SPA, Sekisui cannot now argue that the Harts' failure to adequately prepare the product for FDA submission prior to the time of contracting constitutes fraud.  The SPA allocates that risk to Sekisui.

---

[82]    *See* SPA at 17.

[83]    *Id.* at 18.

[84]    *See id.* at 17.

[85]    *Id.* at 19.

20

Moreover, the SPA addresses SAC's access to personnel and

documents during due diligence.  Paragraph 6.14 provides:

> The Company shall . . . afford the officers, employees and agents of the Purchaser and its Affiliates complete access upon reasonable prior notice at all reasonable times, from the date hereof to the Closing Date, to the Company's and its Subsidiaries' officers, employees, agents, properties, books and records (which shall include access for conducting environmental due diligence, examinations and investigations of the Company and Company Leased Property), and shall furnish the Purchaser with all financial, operating and other data and information as the Purchaser may reasonably request.[86]

Sekisui's allegations regarding the unavailability of key employees

during due diligence might support a claim for the breach of paragraph 6.14 rather

than for fraud.  Even assuming the veracity of the facts in the Complaint, SAC has

not alleged that it requested access to ADI's FDA contact or to the records

regarding prior FEMTELLE premarket FDA submissions.[87]  Nor has SAC alleged

that the Harts misrepresented the availability of ADI's employees or facts

---

[86]     *Id.* at 51.

[87]     *See Lazard Freres & Co. v. Protective Life Ins. Co.*, 108 F.3d 1531, 1543 (2d Cir. 1997) ('[W]here, as here, a party has been put on notice of the existence of material facts which have not been documented and he nevertheless proceeds with a transaction without securing the available documentation or inserting appropriate language in the agreement for his protection, he may truly be said to have willingly assumed the business risk that the facts may not be as represented. Succinctly put, a party will not be heard to complain that he has been defrauded when it is his own evident lack of due care which is responsible for his predicament.') (quoting *Rodas v. Manitaras*, 552 N.Y.S.2d 618, 620 (1st Dep't 1990)).

pertaining to FEMTELLE's previous failure to receive FDA approval.

Additionally, paragraph 4.28 of the SPA addresses omissions of material facts.  It  provides:

> No representation or warranty by the Shareholders or the Company in this Agreement, and no statement made by the Shareholders or the Company in any schedule attached hereto or certificate or other document to be furnished pursuant hereto or in connection with the execution or performance of this Agreement, contains or will at the Closing contain any untrue statement of a material fact or omits or will omit to state a material fact required to be stated herein or therein or necessary to make any of them, in light of the circumstances in which it was made, not misleading.[88]

If, as Sekisui alleges, the Harts failed to disclose the prior FEMTELLE 510(k) submission, such failure constitutes a breach of paragraph 4.28 rather than fraud. Sekisui's fraud claim therefore concerns the performance of the contract instead of fraudulent inducement.

Finally, Sekisui fails to plead any special damages that cannot be recovered as contract damages.  Sekisui's general request for punitive damages does not differentiate the damages recoverable on a fraud claim from those sought for breach of contract.  Sekisui's request for rescission also fails to distinguish between the claims for fraud and breach of contract.  While Sekisui seeks

---

[88]    SPA at 41.

rescission as a remedy only for its fraud claim,[89] courts may also grant rescission as a remedy where a party commits a material and willful breach of contract.[90]

## C.  Leave to Replead

Leave to replead is typically granted unless amendment would be futile.  Here, the disclaimer of representations and warranties in the SPA bars Sekisui's misrepresentation claims based on either the Confidential Memorandum or other written or oral statements.  Paragraphs 4.28 and 6.14 of the SPA render fraudulent omission claims related to the prior FEMTELLE 510(k) submission duplicative of Sekisui's breach of contract claim.  Paragraphs 4.12, 4.14(a), and 4.14(d) similarly render fraudulent omission claims stemming from the Harts' failure to disclose latent defects in ADI's facilities duplicative of Sekisui's breach of contract claim.  Because Sekisui cannot state a fraud claim collateral to its breach of contract claim, Sekisui's fraud claim is dismissed with prejudice.

## VI.  CONCLUSION

For the foregoing reasons, defendants' motion to dismiss is granted in part and denied in part.  The Clerk of the Court is directed to close the motion to dismiss (Docket Entry # 5).  A conference is scheduled for November 1 at 5:00

---

[89]     Compl. ¶ 59.

[90]     *See Krumme v. WestPoint Stevens Inc.*, 238 F.3d 133, 143 (2d Cir. 2000).

p.m.

SO ORDERED:

Shira A. Scheindlin
U.S.D.J.

Dated:      New York, New York
            October 17, 2012

**-Appearances-**


**Counsel for Plaintiffs:**

Karen L. Hagberg, Esq.
Craig B. Whitney, Esq.
Morrison & Foerster LLP
1290 Avenue of the Americas
New York, NY 10104
Telephone:  (212) 468-8000
Facsimile:  (212) 468-7900

**Counsel for Defendants:**

Franklin B. Velie, Esq.
Jonathon G. Kortmansky, Esq.
Siobhan Briley, Esq.
Sullivan & Worcester LLP
1633 Broadway, 32nd Floor
New York, NY 10019
Telephone:  (212) 660-3000
Facsimile:  (212) 660-3001