**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------- X

SEKISUI AMERICAN CORPORATION
and SEKISUI MEDICAL CO. LTD.,

　　　　Plaintiffs,

　- against -

RICHARD HART and MARIE LOUISE
TRUDEL-HART,

　　　　Defendants.

------------------------------------------------------- X

**OPINION AND ORDER**

**12 Civ. 3479**

**SHIRA A. SCHEINDLIN, U.S.D.J.:**

　　　　A decade ago, I issued a series of opinions regarding the scope of a

litigant's duty to preserve electronic documents and the consequences of a failure

to preserve such documents falling within the scope of that duty.[1]  At its simplest,

that duty requires a party anticipating litigation to refrain from deleting

electronically stored information ("ESI") that may be relevant to that litigation.

Such obligation should, at this point, be quite clear – especially to the party

---

[1]　　*See Zubulake v. UBS Warburg LLC*, 217 F.R.D. 309 (S.D.N.Y. 2003)
("*Zubulake I*"); *Zubulake v. UBS Warburg LLC*, No. 02 Civ. 1243, 2003 WL
21087136 (S.D.N.Y. May 13, 2003) ("*Zubulake II*"); *Zubulake v. UBS Warburg
LLC*, 216 F.R.D. 280 (S.D.N.Y. 2003) ("*Zubulake III*"); *Zubulake v. UBS Warburg
LLC*, 220 F.R.D. 212 (S.D.N.Y. 2003) ("*Zubulake IV*"); *Zubulake v. UBS Warburg
LLC*, 229 F.R.D. 422 (S.D.N.Y. 2004) ("*Zubulake V*").

planning to sue.  Here, I consider the appropriate penalty for a party that – with full

knowledge of the likelihood of litigation – intentionally and permanently destroyed

the email files of several key players in this action.[2]  I also consider how to

determine an appropriate remedy for the injured party when it remains unclear

whether the destroyed evidence would, in fact, be favorable to that party.

## I.      INTRODUCTION

Sekisui America Corporation ("Sekisui") and Sekisui Medical Co.,

Ltd. bring this action for breach of contract[3] against Richard Hart ("Hart") and

Marie Louise Trudel-Hart (collectively, "the Harts") in relation to Sekisui's

acquisition of America Diagnostica, Inc. ("ADI"), a medical diagnostic products

manufacturer of which Hart was president.[4]  During discovery, Sekisui revealed

that ESI in the form of email files belonging to certain ADI employees – including

---

[2]      The imposition of sanctions for the spoliation of evidence is a relatively rare occurrence.  While this is the third case in which I have given an adverse inference instruction based on the spoliation of ESI, this number is miniscule considering that I have presided over approximately 4,000 civil cases during my tenure as a United States District Judge.

[3]      The Complaint also asserts a claim for fraud.  *See* Complaint ("Compl.") ¶¶ 54-59.  That claim was dismissed by this Court on October 17, 2012.  *See Sekisui American Corp. v. Hart*, No. 12 Civ. 3479, 2012 WL 5039682 (S.D.N.Y. Oct. 17, 2012).

[4]      *See* Compl. ¶1.

Hart – had been deleted or were otherwise missing.[5]  In March 2013, it became

clear that Sekisui did not institute a litigation hold until more than fifteen months

after sending a Notice of Claim to the Harts.  In the meantime, Sekisui permanently

deleted the ESI of Hart and former ADI employee Leigh Ayres.[6]  In light of these

developments, the Harts requested that this Court impose sanctions on Sekisui for

the spoliation of evidence.[7]  Specifically, the Harts requested: (1) an adverse

inference jury instruction based on the destruction of Hart's and Ayres' ESI;[8] and

(2) sanctions for spoliation based on the alleged or actual loss of the email folders

of several other ADI employees.[9]

---

[5]     *See* Sekisui Document Collection Information ("Sekisui Document Information"), Ex. 5 to the Declaration of Siobahn Briley, counsel to the Harts ("Briley Decl."), at 2-3.  This information was revealed to the Harts on February 8, 2013.  *See id*.

[6]     *See* 3/8/13 Letter from Craig Whitney, counsel to Sekisui, to Jonathan Kortmansky, counsel to the Harts ("3/8 Sekisui Letter"), Ex. 7 to Briley Decl. at 1; *Sekisui*, 2013 WL 2951924, at *2; Email from Dicey Taylor to Doug LeMasurier dated October 20, 2011 ("10/20 Taylor Email"), Ex. 11 to Briley Decl. at SEK00977946.

[7]     *See, e.g.*, 3/22/13 Endorsed Letter from Franklin Velie, counsel to the Harts, to the Court ("3/22 Hart Letter"), Dkt. No. 37, at 3.

[8]     *See id.*

[9]     *See* 4/13/13 Letter from Velie to Magistrate Judge Maas ("4/13 Hart Letter"), Ex. 3 to the Briley Decl. at 1-3.

3

I referred this dispute to Magistrate Judge Maas.[10]  After extensive letter briefing and oral argument, the Magistrate Judge issued a written decision on June 10, 2013, in which he declined to issue any sanctions, finding that the Harts failed to show any prejudice resulting from the destruction of the ESI.[11]  The Harts filed objections to the portions of the Memorandum Decision declining to impose sanctions for the destruction of ESI.[12]  For the reasons set forth below, the Memorandum Decision of the Magistrate Judge is reversed to the extent it denied the Harts' request for a sanction based on Sekisui's destruction of ESI.

## II.   BACKGROUND

### A.   The Present Action[13]

---

[10]   *See* 4/8/13 Order, Dkt. No. 38.

[11]   *See Sekisui America Corp. v. Hart*, No. 12 Civ. 3479, 2013 WL 2951924, at *1 (S.D.N.Y. June 10, 2013) ("Memorandum Decision").

[12]   The Harts object to the Memorandum Decision only insofar as it refused to issue sanctions for the spoliation of evidence based on the destruction of certain ESI.  *See* the Harts' Objections to Magistrate Judge's Order Denying Sanctions ("Hart Mem."), at 10-16.  They filed no objections to Parts III or IV of the Memorandum Decision.  *See id.*

[13]   Unless otherwise provided, the facts stated in this section are taken from the Memorandum Decision.  I include only those facts relevant to the decision declining to award sanctions for the destruction of ESI.  For more detailed factual background, see *Sekisui*, 2013 WL 2951924.  While the Harts assert the alleged destruction of former ADI employee Michael Smirnov's ESI as a basis for their objections to the Memorandum Decision, I decline to address that argument here since it remains unclear how much of Smirnov's ESI was in fact destroyed.

Sekisui expressed interest in acquiring ADI from the Harts in late 2008.  Shortly before the closing in 2009, Hart – acting as chief executive officer – apparently instructed ADI employees to delete all emails that no longer required action.[14]  The stock purchase agreement ("SPA") governing the sale of ADI to Sekisui contained a number of representations and warranties ("Representations"), including: (1) that ADI complied with all relevant federal regulations; (2) that its facilities were sufficient to conduct its business activities; and (3) that ADI's products contained no material defects.  Not satisfied that ADI was complying with

_____

*Compare* Hart Mem. at 2 ("Plaintiffs completely deleted Michael Smirnov's ESI") *with Sekisui*, 2013 WL 2951924, at *8 n.5 ("I am unaware of any [admission that Smirnov's ESI was deleted].  Sekisui's representation to the Court regarding Smirnov during oral argument was that it had not yet determined what happened to his emails.").  In letters to the Magistrate Judge sent after the oral argument, Sekisui acknowledged that there are "missing emails for Mr. Smirnov," but made no admission that his email files were destroyed in the manner that Hart's and Ayres' were.  *See* 4/15/13 Letter from Karen Hagberg, counsel to Sekisui, to Magistrate Judge Maas ("4/15 Sekisui Letter"), Ex. 10 to the Declaration of Karen Hagberg ("Hagberg Decl.") at 2.  In any event, the dispute is irrelevant to my findings here, as the Magistrate Judge made no findings on this issue based on the record at that time.

[14]     *See* 3/27/13 Letter from Karen Hagberg to the Court ("3/27 Sekisui Letter"), Ex. 1 to Hagberg Decl. at 1.  At oral argument before Magistrate Judge Maas, the Harts' counsel represented that such instruction was merely a "standard issue document retention policy of the kind everybody has."  4/8/13 Transcript of Hearing before Magistrate Judge Maas ("4/8 Hearing Tr."), at 18.  Counsel further represented that the "document retention policy did not result in the loss of any documents, because the computers were backed up and tapes were made and all of this was turned over to [Sekisui] and later destroyed by [Taylor]."  *Id.* at 19.

the Representations, Sekisui fired Hart and sent the Harts a Notice of Claim on October 14, 2010, evidencing Sekisui's intent to file a lawsuit.  Sekisui then filed its Complaint on May 2, 2012, alleging that the Harts breached the contract of sale by violating the Representations in the SPA.[15]

### B.      The Destruction of Hart's ESI

On February 8, 2013, counsel for Sekisui revealed to the Harts that Hart's email files were deleted in March 2011, five months after the Harts received the Notice of Claim.[16]  In response to questioning by the Harts, Sekisui revealed that a litigation hold was put into place in January 2012, about fifteen months after the Notice of Claim was sent to the Harts.[17]  Sekisui did not notify Northeast Computer Services ("NCS") – the vendor in charge of managing Sekisui's information technology systems – of the duty to preserve until July 2012, three months after the Complaint was filed.[18]  In the interim, Hart's email folder was permanently deleted by NCS at the directive of former ADI employee Dicey

---

[15]      *See* Compl. ¶¶ 47-53.

[16]      *See* Sekisui Document Information at 2-3; 3/27 Sekisui Letter at 1.

[17]      *See* 3/8 Sekisui Letter at 1.

[18]      *See id.* at 2.

Taylor, who was ADI's head of Human Resources.[19]  Sekisui initially represented

that no other ESI was missing besides Hart's and that of a few other former ADI

employees, none of whom were considered relevant custodians.[20]

Further investigation by the Harts revealed that days before filing the

Complaint, the NCS employee who deleted Hart's ESI emailed another NCS

employee regarding Taylor's directive.  According to the email:

> Several months ago, maybe in the summer, [Taylor] told me to
> delete [Hart's] mailbox.  I followed this by "are you sure? are you
> sure? are you sure?"  She was very certain that she wanted it
> deleted, apparently she thought that there wasn't any more useful
> information or whatever they needed they captured.  I would have
> personally archived it. . . .  This is not 100% certain, but I thought
> I heard that [Hart's] email had been combed through by the
> Sekisui lawyers before [Taylor] told me to delete it.[21]

In June 2012, Doug LeMasurier – the NCS employee in charge of the ADI account

– confirmed that Hart's email was permanently deleted and irretrievable.[22]

LeMasurier stated: "[T]here is no backup of this file.  We recommended that it not

_____

[19]    *See, e.g.*, 4/26/12 Email from Doug LeMasurier to Toni Franchina ("4/26 LeMasurier Email"), Ex. 12 to Briley Decl. at SEK01235230.  *See also* 4/19/13 Letter from Velie to Magistrate Judge Maas ("4/19 Hart Letter"), Ex. 3 to Briley Decl. at 1.  Sekisui's counsel described Taylor as "kind of the office manager."  4/8 Hearing Tr. at 5.

[20]    *See* 3/8 Sekisui Letter at 2.

[21]    4/26 LeMasurier Email at SEK01235230-SEK01235231.

[22]    *See* 6/20/12 Email from Doug LeMasurier ("6/20 LeMasurier Email"), Ex. 13 to Briley Decl. at SEK01254331.

be deleted, but we were instructed by [an ADI] employee to delete the file."[23]

By way of explanation, Sekisui maintains that the destruction of Hart's ESI was "largely due to the actions of a single former employee acting without direction from Sekisui," *i.e.*, Taylor.[24]  Sekisui further asserts that Taylor made the unilateral decision to delete Hart's email in order to free up space on the ADI server after determining that Hart was no longer receiving work-related email.[25]  Before directing NCS to permanently delete Hart's ESI, Taylor apparently "identified and printed any emails that she deemed pertinent to the company," which emails have been produced to the Harts.[26]  Even those emails deemed "pertinent to the company" do not appear to have been backed up before being deleted by NCS; they were merely printed by Taylor in hard copy.[27]  Sekisui searched several alternative sources and eventually produced about 36,000 emails to and from Hart.[28]  Sekisui also maintains that, according to current and former

---

[23]    *Id.*

[24]    3/27 Sekisui Letter at 1.

[25]    *See id.*

[26]    4/24/13 Letter from Karen Hagberg to Magistrate Judge Maas ("4/24 Sekisui Letter"), Ex. 15 to Briley Decl. at 2.

[27]    *See id.  See also* 4/8 Hearing Tr. at 4 ("[t]here were no back-up tapes.").

[28]    *See* 4/15/13 Letter from Karen Hagberg to Magistrate Judge Maas ("4/15 Sekisui Letter"), Ex. 4 to Hagberg Decl. at 2.

ADI employees, Hart "used email sparingly," often used his personal email

account, and took a work computer from ADI on which he retained copies of his

work email, and which he never returned.[29]  It is impossible to say how many

emails were permanently deleted and remain unrecoverable.  Because of a

cognitive disorder, Hart cannot testify or be deposed in this action.[30]

### C.    The Destruction of Ayres' ESI

Sekisui initially denied the Harts' assertion that Ayres' emails

had also been deleted, assuring that "Sekisui has maintained the email folders for

[custodians including Ayres] and there is no basis to accuse Sekisui of the

improper deletion" of Ayres' ESI.[31]  However, the Harts uncovered evidence

establishing that, in fact, Taylor instructed NCS to delete Ayres' email files in

October 2011.[32]  Ayres was the ADI employee responsible for ensuring compliance

with FDA regulations, and the deletion of her ESI was carried out with the

---

[29]    *See* 3/27 Sekisui Letter at 2-3.  While Sekisui maintains that it has spoken to "many, many people" about the deletion of Hart's ESI, including several former ADI employees, Sekisui has apparently not submitted affidavits from any of these employees, including Taylor.  *See* 4/8 Hearing Tr. at 5; Hagberg Decl. at 1-2.

[30]    *See* 6/6/13 Letter from Dr. Haakon Nygaard ("Nygaard Letter"), Ex. 1 to Briley Decl. at 1; 4/19 Hart Letter at 2.

[31]    3/27 Sekisui Letter at n.3.

[32]    *See* 10/20 Taylor Email at SEK00977946.

apparent approval of ADI's then-President and chief operating officer, Kevin Morrissey.[33]  Taylor directed LeMasurier to "delete Leigh Ayres from the . . . server – totally into cyberspace.  Do not archive.  Kevin [Morrissey] has approved this removal."[34]  Taylor's request apparently responded to another ADI employee's suggestion that Ayres' email *address* be deleted since Ayres was no longer an employee and had only been receiving junk mail.[35]  Instead, more than a year after the duty to preserve arose, Taylor ordered the permanent destruction of Ayres' ESI with apparent permission from (and at least awareness of) of ADI's then-President.

Sekisui maintains that the deletion of Ayres' email files was done "for the sole purpose of removing emails that were unnecessary for the continued operation of ADI's business."[36]  Sekisui was able to produce nearly 7,000 emails and attachments "from Ms. Ayres's archived email files, plus several thousand more Ayres emails from other custodians' files."[37]  There is, again, no way to

---

[33]     *See* 4/19 Hart Letter at 1-2; 10/20 Taylor Email at SEK00977946 (copying Morrissey).  Ayres was identified in the Harts' Rule 26(a) disclosures as an individual likely to have discoverable information.  *See* 4/19 Hart Letter at 2.

[34]     10/20 Taylor Email at SEK00977946.

[35]     *See* 10/20/11 Email from Joe Azary to Kevin Morrissey and Dicey Taylor ("10/20 Azary Email"), Ex. 11 to Briley Decl. at SEK00977947.

[36]     4/24 Sekisui Letter at 1.

[37]     *Id.* at 1-2.

10

determine how much ESI was deleted permanently and remains unrecoverable.

Sekisui also emphasizes that it has maintained and produced thousands of relevant

documents – including non-email electronic files – of both Hart and Ayres.[38]

Accordingly, Sekisui argues that the missing emails would be of only marginal

relevance in this action.[39]

### D.    The Decision of the Magistrate Judge

The Magistrate Judge concluded that the destruction of Hart's ESI

"may well rise to the level of gross negligence" and that the emails destroyed may

well have been relevant to the breach of contract claim, but that no sanctions

should be imposed as a result of such destruction because the Harts failed to

produce or describe any relevant email that Sekisui failed to produce, *i.e.*, the Harts

made no showing of prejudice.[40]   As to Ayres' ESI, the Magistrate Judge called

Taylor's directive "at first blush, extremely troublesome," but made no

determination of Sekisui's culpability in the destruction of that ESI.[41]   Rather, the

Magistrate Judge declined to impose sanctions based on the Hart Defendants'

---

[38]      *See* 4/24 Sekisui Letter at 1-2; 3/27 Sekisui Letter at 3.

[39]      *See* 3/27 Sekisui Letter at 3.

[40]      *See Sekisui*, 2013 WL 2951924, at *4-5.

[41]      *See id.* at *9.

11

failure to show that they have been prejudiced by the destruction of Ayres' ESI.[42]

The Magistrate Judge declined to presume either relevance or prejudice despite his

finding that Sekisui "may" have acted in a grossly negligent manner.[43]

## III.   LEGAL STANDARD

A district court must "modify or set aside any part of [a magistrate

judge's] order that is clearly erroneous or is contrary to law."[44]  "A magistrate

judge's findings may be considered clearly erroneous where on the entire evidence,

the [district court] is left with the definite and firm conviction that a mistake has

been committed."[45]  If the magistrate judge's order "'fails to apply or misapplies

relevant statutes, case law, or rules of procedure,'" such an order is "contrary to

law."[46]

---

[42]     *See id.*

[43]     *See id.* at *4 (finding that Sekisui "may" have acted in a grossly
negligent manner, but that nevertheless "[t]he Hart Defendants must also show the
emails were relevant . . . and, more fundamentally, that they suffered prejudice.")
The Magistrate Judge also found that "Sekisui destroyed [ESI] with the requisite
culpable state of mind."  *Id.* at *5.

[44]     Fed. R. Civ. P. 72 (a).

[45]     *In re Comverse Tech., Inc. Secs Litig.*, No. 06 Civ. 1925, 2007 WL
680779, at *2 (E.D.N.Y. March 2, 2007) (quotation marks omitted).

[46]     *Gucci America, Inc. v. Guess?, Inc.*, No. 09 Civ. 4373, 2011 WL
9375, at *1 (S.D.N.Y. Jan. 3, 2011) (quoting *In re Comverse*, 2007 WL 680779, at
*2).

## IV.   APPLICABLE LAW

The controlling case in this Circuit regarding adverse inference instructions is *Residential Funding Corp. v. DeGeorge Financial Corp.*[47]  The court there held:

> [A] party seeking an adverse inference instruction based on the destruction of evidence must establish (1) that the party having control over the evidence had an obligation to preserve it at the time it was destroyed; (2) that the records were destroyed with a culpable state of mind; and (3) that the destroyed evidence was relevant to the party's claim or defense such that a reasonable trier of fact could find that it would support that claim or defense.[48]

Rule 37 "authorizes a wide range of sanctions for discovery abuses."[49]  If the district court determines that a party wrongfully withheld or destroyed evidence, it may tell the jury "those facts and nothing more; or it might [add]

---

[47]     30 F.3d 99 (2d Cir. 2002).  The Second Circuit continues to cite *Residential Funding* as the controlling law on adverse inference instructions based on a party's destruction of evidence.  *See, e.g.*, *Mali v. Federal Ins. Co.*, Nos. 11-5413-cv, 12-0174-cv, 2013 WL 2631369, at *4 (2d Cir. 2013).

[48]     *See Residential Funding*, 30 F.3d at 107 (quotation marks omitted).  Sekisui does not dispute that it had an obligation to preserve the evidence destroyed here.  *See, e.g.*, Sekisui's Response to Harts' Objections to the Memorandum Decision ("Sekisui Mem.") at 2-3.  Accordingly, the only issues before the Magistrate Judge were (1) whether Sekisui acted with a culpable state of mind in destroying the ESI and (2) whether the missing emails are relevant to Sekisui's claim or Hart's defense such that a reasonable trier of fact could find that they would support that claim or defense.  *See generally Residential Funding*, 30 F.3d at 107-08.

[49]     *Mali*, 2013 WL 2631369, at *4.

that the jury could, but need not, draw inferences against [the spoliators] based on those facts; or . . . that the jury *should* draw adverse inferences against [the spoliators] based on those facts; or that the jury should render a verdict for the [innocent party]."[50]

### A.   Establishing a Culpable State of Mind

"The culpable state of mind factor is satisfied by a showing that the evidence was destroyed knowingly, even if without intent to [breach a duty to preserve it], or negligently."[51]   "The sanction of an adverse inference may be

---

[50]   *Id.*

[51]   *See Residential Funding*, 30 F.3d at 108 (quotation marks omitted). The Magistrate Judge notes that the Standing Committee on Rules of Practice and Procedure of the Judicial Conference of the United States Courts has published for public comment an amended Rule 37(e) to the Federal Rules of Civil Procedure. *See Sekisui*, 2013 WL 2951924, at *3 n.3. Such a rule, if adopted, would abrogate *Residential Funding* insofar as it holds that sanctions may be appropriate in instances where evidence is negligently destroyed. *See id.* Rather, the proposed rule would permit sanctions only if the destruction of evidence (1) caused substantial prejudice and was willful or in bad faith or (2) irreparably deprived a party of any meaningful opportunity to present or defend its claims. *See id*. The Advisory Committee Note to the proposed rule would require the innocent party to prove that "it has been substantially prejudiced by the loss" of relevant information, even where the spoliating party destroyed information willfully or in bad faith. 5/8/2013 Report of the Advisory Committee on Civil Rules at 47.   I do not agree that the burden to prove prejudice from missing evidence lost as a result of willful or intentional misconduct should fall on the innocent party. Furthermore, imposing sanctions only where evidence is destroyed willfully or in bad faith creates perverse incentives and encourages sloppy behavior.  Under the proposed rule, parties who destroy evidence cannot be sanctioned (although they can be subject to "remedial curative measures") even if they were negligent, grossly negligent, or reckless in doing so.  In any event, the proposed rule has not

14

appropriate in some cases involving the negligent destruction of evidence because

each party should bear the risk of its own negligence."[52]  This is because

> [t]he adverse inference provides the necessary mechanism for restoring
> the evidentiary balance.  The inference is adverse to the destroyer not
> because of any finding of moral culpability, but because the risk that the
> evidence would have been detrimental rather than favorable should fall
> on the party responsible for its loss.[53]

It follows that gross negligence also satisfies the culpability requirement.[54]  This

circuit follows a "case-by-case approach to the failure to produce relevant

evidence" because "such failures occur along a continuum of fault – ranging from

innocence through the degrees of negligence to intentionality."[55]

---

been adopted.  *See* Henry Kelston, *Proposed Discovery Amendments Move to
Public Comment*, Law Technology News (June 6, 2013),
http://www.law.com/jsp/lawtechnologynews/PubArticleLTN.jsp?id=12026030398
41&Proposed_Discovery_Amendments_Move_to_Public_Comment (last visited
July 30, 2013).  The public comment period has not yet begun, and no public
hearings have yet been held.  *See id.*  Accordingly, the proposed rule is irrelevant
for purposes of this motion.

[52]     *Residential Funding*, 306 F.3d  at 108.

[53]     *Id.* (quotation marks omitted).

[54]     *See Chin v. Port Auth. of N.Y. & N.J.*, 685 F.3d 135, 162 (2d Cir.
2012) (a finding of gross negligence permits, but does not require, a district court
to give an adverse inference instruction); *In re Pfizer Inc. Sec. Litig.*, 288 F.R.D.
297, 314 (S.D.N.Y. 2013).

[55]     *Residential Funding*, 306 F.3d  at 108 (quotation marks and
alterations omitted).

## B.     Establishing Relevance

"'[R]elevant' in [the context of an adverse inference instruction]

means . . . [that] the party seeking an adverse inference must adduce sufficient

evidence from which a reasonable trier of fact could infer that 'the destroyed [or

unavailable] evidence would have been of the nature alleged by the party affected

by its destruction,'" *i.e.*, that the destroyed evidence would have been helpful to the

movant.[56]  Yet "[c]ourts must take care not to hold the prejudiced party to too strict

a standard of proof regarding the likely contents of the destroyed or unavailable

evidence, because doing so would subvert the purposes of the adverse inference,

and would allow parties who have destroyed evidence to profit from that

destruction."[57]

When evidence is destroyed willfully, the destruction alone "is

sufficient circumstantial evidence from which a reasonable fact finder could

conclude that the missing evidence was unfavorable to that party."[58]  "[T]he

intentional destruction of relevant records, either paper or electronic, after the duty

---

[56]     *Id.* at 108-09 (alteration in original) (quoting *Kronisch v. United States*, 150 F.3d 112, 127 (2d Cir. 1998)).

[57]     *Id.* at 109 (quotation marks and alterations omitted).

[58]     *Id.*

16

to preserve has attached, is willful."[59]  "Similarly, a showing of gross negligence in the destruction . . . of evidence will in some circumstances suffice, standing alone, to support a finding that the evidence was unfavorable to the grossly negligent party."[60]  Accordingly:

> where a party seeking an adverse inference adduces evidence that its opponent destroyed potential evidence . . . in bad faith or through gross negligence (satisfying the "culpable state of mind" factor), that same evidence . . . will frequently also be sufficient to permit a jury to conclude that the missing evidence is favorable to the party (satisfying the "relevance" factor).[61]

---

[59]  *Pension Comm. of Univ. of Montreal Pension Plan v. Banc of America Secs., LLC*, 685 F. Supp. 2d 456, 465 (S.D.N.Y. 2010).  The Second Circuit rejected that portion of *Pension Committee* holding that the failure to institute a litigation hold constitutes gross negligence per se.  *See Chin*, 685 F.3d at 162.  Instead, the court determined that the "'better approach is to consider the failure to adopt good preservation practices as one factor' in the determination of whether discovery sanctions should issue."  *Id.* (alterations omitted) (quoting *Orbit One Comm'ns, Inc. v. Numerex Corp.*, 271 F.R.D. 429, 441 (S.D.N.Y. 2010)).  *Chin* did not adopt or endorse any other portion of the *Orbit One* decision, nor did it comment on any other portion of the *Pension Committee* decision.  *See id.*

[60]  *Residential Funding*, 306 F.3d  at 109.  This circuit is not the only one to afford this presumption.  *See, e.g.*, *Alexander v. National Farmers Org.*, 687 F.2d 1173, 1205-06 (8th Cir. 1982) ("[the spoliating party] can hardly assert any presumption of irrelevance as to the destroyed documents"); *Sampson v. City of Cambridge, Md.*, 251 F.R.D. 172, 179 (D. Md. 2008) ("A failure to preserve documents in bad faith, such as intentional or willful conduct, alone establishes that the destroyed documents were relevant").  For a comprehensive (though no longer entirely up to date) summary of case law regarding spoliation by circuit, see *Victor Stanley, Inc. v. Creative Pipe, Inc.*, 269 F.R.D. 497, 542 (D. Md. 2010).

[61]  *Residential Funding*, 306 F.3d at 109.

17

## C.     Prejudice

When evidence is destroyed willfully or through gross negligence, prejudice to the innocent party may be presumed because that party is "deprived of what [the court] can assume would have been evidence relevant to [the innocent party's claims or defenses]."[62]   That is, prejudice is presumed precisely because relevant evidence, *i.e.*, evidence presumed to be unfavorable to the spoliating party,[63] has been intentionally destroyed and is no longer available to the innocent party.   When, however, the destruction of evidence is merely negligent, the burden

---

[62]     *S. New England Tel. Co. v. Global NAPs* Inc., 624 F.3d 123, 148 (2d Cir. 2010) (affirming imposition of default judgment against defendants as discovery sanction where defendants willfully and in bad faith deleted relevant documents without requiring innocent party to prove prejudice).   The Sixth Circuit has also affirmed the imposition of an adverse inference instruction without requiring a separate showing of prejudice by the innocent party where the intentional destruction of evidence "severely compromised," *i.e.*, prejudiced, the innocent part's case "by depriving [the party] of the most relevant piece of evidence to prove their claims." *Beaven v. United States Dep't of Justice*, 622 F.3d 540, 555 (6th Cir. 2010) (applying the *Residential Funding* adverse inference standard). *See also Pension Comm.*, 685 F. Supp. 2d at 467 ("Relevance and prejudice may be presumed when the spoliating party acted in bad faith or in a grossly negligent manner.") (citing *Residential Funding*, 306 F.3d at 109).   Even in those circumstances, the presumption of prejudice may be rebutted by the spoliating party. *See R.F.M.A.S., Inc. v. So*, 271 F.R.D 13, 25 (S.D.N.Y. 2010) ("[T]he absence of prejudice can be shown by demonstrating, for example, that the [innocent party was] able to obtain the same evidence from another source.").

[63]     In the context of an adverse inference analysis, evidence is "relevant" if a "a reasonable fact finder could conclude that the missing evidence was unfavorable to [the spoliating] party." *Residential Funding*, 306 F.3d at 109. *See also supra* Part IV.B.

falls on the innocent party to prove prejudice.[64]   This circuit has "repeatedly held

that a case-by-case approach to the failure to produce relevant evidence, at the

discretion of the district court, is appropriate."[65]   The failure to adopt good

preservation practices is "one factor in the determination of whether discovery

sanctions should issue."[66]

## V.   DISCUSSION

### A.   Culpable State of Mind

#### 1.   The Destruction of Hart's ESI

The Magistrate Judge concluded that the destruction of Hart's ESI

"may well rise to the level of gross negligence," but apparently decided that such

---

[64]      *See Byrnie v. Town of Cromwell, Bd. of Educ.*, 243 F.3d 93, 108 (2d
Cir. 2001).  At the April 8 Hearing, the Magistrate Judge implied that no rebuttable
presumption prejudice should be afforded to the innocent party even when
evidence is destroyed through gross negligence.  *See* 4/8 Hearing Tr. at 27 ("If
there's gross negligence [the law] used to be [that] the client is entitled to a
rebuttable presumption that the missing evidence would have been favorable to the
Harts.  On the other hand, if it's negligence but not gross negligence, then that's
not necessarily the case.  And I'm really reciting to you the law as given by Judge
Scheindlin in the *Zubulake* case, among others, but Magistrate Judge Francis takes
the view, which I subscribe to, that in any event there has to be a showing of
prejudice.").  But as just discussed, the law in this circuit is that when evidence is
destroyed willfully or through gross negligence, that finding is ordinarily sufficient
to establish both relevance and prejudice.

[65]      *Chin*, 685 F.3d at 162 (quotation marks omitted) (citing *Residential
Funding*, 306 F.3d at 108).

[66]      *Id.*

destruction was not willful because "there has been no showing that Taylor directed [the emails'] erasure for any malevolent purpose."[67]  Because Hart's ESI was destroyed at the direct request of an ADI employee after the duty to preserve had attached and the law does not require a finding of malevolence to constitute willfulness in the context of spoliation, I find this conclusion contrary to law and clearly erroneous.

Hart's ESI was willfully destroyed.  It is undisputed that Taylor directed an NCS employee to permanently delete Hart's ESI.[68]  Indeed, Taylor was apparently "very certain" that the ESI should be deleted and, notably, demanded the destruction despite the fact that the NCS employee recommended against such action.[69]  Moreover, no back-up tapes were made of the data deleted,[70] and even the

---

[67]     *Sekisui*, 2013 WL 2951924, at *4.

[68]     *See, e.g.*, 3/27 Sekisui Letter at 1.

[69]     *See* 4/26 LeMasurier Email at SEK01235230.  The Memorandum Decision relies heavily on *Orbit One*.  That case – which is not controlling here, except insofar as one of its holdings was adopted in *Chin* as noted (*see supra* note 58) – involved the "downgrading" of certain data by the executive of a company from an accessible to an inaccessible format.  *See Orbit One*, 271 F.R.D. at 432-35.  The court there refused to issue sanctions where, notably, such action was taken at the request of the company's IT administrator.  *See id.* at 433.  Moreover, in *Orbit One*, the court found no evidence to suggest that any data had actually been destroyed – let alone destroyed willfully or through gross negligence.  *See id.* at 442-44.

[70]     *See* 4/8 Hearing Tr. at 4.

20

emails that Taylor *did* print are of significantly less evidentiary value given that their metadata is no longer available.[71]  The law does not require a showing of malice to establish intentionality with respect to the spoliation of evidence.  In the context of an adverse inference analysis, there is no analytical distinction between destroying evidence in bad faith, *i.e.*, with a malevolent purpose, and destroying it

_____

[71]      The MIT Media Lab recently developed a tool demonstrating the significance of email metadata.  The tool analyzes the metadata from the user's Gmail account and visualizes that data, revealing who the user talked to, how often, and when, among other things.  *See immersion: a people-centric view of your email life*, http://immersion.media.mit.edu (last visited July 31, 2013). Printing paper copies of emails and permanently deleting the electronic data, then, deprives those emails of a significant amount of their evidentiary value.  Several courts have acknowledged the significant advantages of producing electronic documents in their native format.  *See, e.g.*, *Covad Comm'cns Co. v. Revonet, Inc.*, 267 F.R.D. 14, 19 (D.D.C. 2010) ("it is improper to take an electronically searchable document and either destroy or degrade the document's ability to be searched" (citing cases, quotation marks omitted); *Covad Comm'cns Co. v. Revonet, Inc.*, 254 F.R.D. 147, 150-51 (D.D.C. 2008) (ordering the production of emails in electronic format after opposing party produced such emails in hard copy form).  Moreover, the Advisory Committee Notes to Rule 34 reinforces the importance of maintaining electronic data in electronic form.  *See* Fed. R. Civ. P. 34, Advisory Committee Note (2006 Amends.) ("[T]he option to produce in a reasonably usable form does not mean that a responding party is free to convert electronically stored information from the form in which it is ordinarily maintained to a different form that makes it more difficult or burdensome for the requesting party to use the information efficiently in the litigation.  If the responding party ordinarily maintains the information it is producing in a way that makes it searchable by electronic means, the information should not be produced in a form that removes or significantly degrades this feature.") Whatever emails were printed by Taylor before she directed the destruction of Hart's ESI have been significantly degraded.

willfully.[72]   That Sekisui provides a good faith explanation for the destruction of

Hart's ESI – suggesting that Taylor's directive was given in order to save space on

the server – does not change the fact that the ESI was willfully destroyed.

### 2.    The Destruction of Ayres' ESI

The Magistrate Judge declined to issue sanctions for the destruction of

Ayres' ESI based on his conclusion that the Harts have not been prejudiced by

such destruction.[73]   Because the Magistrate Judge failed to perform any analysis of

Sekisui's culpability in destroying Ayres' ESI, his findings are contrary to law and

clearly erroneous.

The adverse inference analysis required by *Residential Funding*

necessitates a finding of culpability with respect to the destruction of the missing

evidence.[74]   Without explicitly saying so, the Magistrate Judge implies that the

destruction of Ayres' ESI was not willful since Taylor's directive "appears to have

been sent in response to a request to delete Ayres' email address . . . because it . . .

was cluttering ADI's server."[75]   To the extent that the Magistrate Judge *did* make a

---

[72]    *See Residential Funding*, 306 F.3d  at 109 (using "bad faith" and "intentional destruction" interchangeably for the purposes of culpability).

[73]    *See Sekisui*, 2013 WL 2951924, at *9.

[74]    *See Residential Funding*, 306 F.3d  at 107.

[75]    *Sekisui*, 2013 WL 2951924, at *9.

finding of culpability with respect to the destruction of Ayres' ESI, such finding was clearly erroneous. As discussed earlier, even a good faith explanation for the willful destruction of ESI when the duty to preserve has attached does not alter the finding of willfulness. Here, the deletion of Ayres' ESI was intentional: not only was potentially relevant ESI destroyed at the behest of an ADI employee after the duty to preserve had attached but such direction was given with *at least* the knowledge of ADI's then-President, Kevin Morrissey, if not his outright approval.[76]

### 3.   Sekisui's Failure to Ensure Preservation of Relevant Documents

Because the Magistrate Judge found that Sekisui's failure to implement appropriate document retention practices "*may well* rise to the level of gross negligence," I now clarify that such failure constitutes gross negligence in these circumstances. While the failure to timely institute a litigation hold does not constitute gross negligence per se,[77] the facts here are egregious and establish that Sekisui was grossly negligent. *First*, no litigation hold was issued by Sekisui until

---

[76]   *See* 10/20 Taylor Email at SEK00977946 (copying Morrissey). Moreover, the NCS employee responsible for deleting the ESI "thought [he] heard that [Hart's] email had been combed through by the Sekisui lawyers before [Taylor] told [him] to delete it."  4/26 LeMasurier Email at SEK01235231.

[77]   *Chin*, 685 F.3d at 162.

fifteen months after the Notice of Claim was sent to the Harts.[78]  Such failure is

inexcusable given that Sekisui is the plaintiff in this action and, as such, had full

knowledge of the possibility of future litigation.  *Second*, once a litigation hold was

issued, it took Sekisui another six months to notify its IT vendor – *i.e.*, the

company responsible for actually preserving the relevant documents – of that duty

to preserve.[79]  And, in the meantime, the ESI of *at least* two significant former ADI

employees was destroyed at ADI's direction.[80]  As such, I find that (1) Sekisui's

destruction of the Hart and Ayres ESI was intentional, and (2) its further failure to

meet even the most basic document preservation obligations constitutes gross

negligence.

---

[78]     *See* 3/8 Sekisui Letter at 1.  The Magistrate Judge notes that the
failure to institute a litigation hold does not establish gross negligence per se.  *See
Sekisui*, 2013 WL 2951924, at *4.  Rather, such failure is one factor in the
determination of whether to issue discovery sanctions.  *See id.* (citing *Chin*, 685
F.3d at 162).  As discussed below, the failure to timely institute a litigation hold is
only one in an extensive list of Sekisui's document retention-related failures.  *See
infra* Part V.A.

[79]     *See* 3/8 Sekisui Letter at 2.

[80]     As discussed earlier, Michael Smirnov's ESI is also missing.  *See
supra* note 11.  Smirnov was the ADI employee in charge of shepherding
"products through the transition from [research and development] to 510(k)
preparation."  8/14/08 Email from Richard Hart to ADI Employees, Ex. 4 to Briley
Decl. at SEK00623217.

## B.    Relevance

There is no question that Hart's and Ayres' ESI is relevant.  The Magistrate Judge concluded as much, acknowledging that any incoming and outgoing emails regarding the adequacy of ADI's facilities throughout the relevant time period would be relevant to Sekisui's breach of contract claim, and noting that "it is not difficult to envision numerous respects in which Hart's incoming and outgoing emails might be relevant."[81]  Moreover, Ayres' ESI would be relevant because "Ayres previously had been the ADI employee responsible for ensuring ADI's compliance with FDA regulations."[82]  Indeed, there can be no doubt that Hart's and Ayres' ESI is relevant based solely on *whose* data was destroyed.  *First*, Hart is not only a defendant in this action, but also is unable to testify on his own behalf due to a cognitive disorder.[83]  *Second*, Ayres' position at ADI is directly related to the claim in this action:  Sekisui makes a claim for breach of contract, in part, on the basis that the Harts breached the Representation relating to FDA compliance,[84] and Ayres was the ADI employee responsible for such compliance.[85]

---

[81]    *Sekisui*, 2013 WL 2951924, at *5.

[82]    *Id.* at *9.

[83]    *See* Nygaard Letter; 4/19 Hart Letter at 2.

[84]    *See, e.g.*, Compl. ¶ 42.

[85]    *See Sekisui*, 2013 WL 2951924, at *9.

Sekisui appears to concede the relevance of Hart's and Ayres' ESI in any event.[86]
Indeed, the real argument here has always been whether the destruction of that ESI
prejudices the Harts.[87]

### C.    Prejudice

The Magistrate Judge found that sanctions should not be imposed  –
despite the fact that the missing ESI could be relevant to the Harts' defense –
because the Harts failed to show that "relevant information potentially helpful to
them is missing."[88]  Because the destruction of evidence was intentional, I find that
the imposition of such a burden on the innocent party is contrary to law.

When evidence is destroyed intentionally, such destruction is
sufficient evidence from which to conclude that the missing evidence was
unfavorable to that party.[89]  As such, once wilfulness is established, no burden is
imposed on the innocent party to point to now-destroyed evidence which is no

---

[86]     *See* 4/24 Sekisui Letter at 1-2 (arguing that no sanctions should be
imposed because the Harts are unable to articulate any prejudice); Sekisui Mem. at
4 ("Defendants . . . have still failed to show any prejudice").  Sekisui's extensive
efforts to retrieve the missing data suggests that it concedes the ESI's relevance.
*See* 4/24 Sekisui Letter at 2 ("Sekisui . . . has expended considerable time and
effort to retrieve missing data, including hiring a forensic expert to successfully
retrieve many files.").

[87]     *See* 4/24 Sekisui Letter at 1-2.

[88]     *Sekisui*, 2013 WL 2951924, at *5.

[89]     *See Residential Funding*, 306 F.3d  at 109.

longer available *because the other party destroyed it*.  Rather, the "risk that the evidence would have been detrimental rather than favorable [to the spoliator] should fall on the party responsible for its loss."[90]  To shift the burden to the innocent party to describe or produce what has been lost as a result of the opposing party's willful or grossly negligent conduct is inappropriate because it incentivizes bad behavior on the part of would-be spoliators.  That is, it "would allow parties who have destroyed evidence to profit from that destruction."[91]  Prejudice is presumed for the purposes of determining whether to give an adverse inference instruction when, as here, evidence is willfully destroyed by the spoliating party.[92]

        As a result of the destruction of Hart's and Ayres' ESI, the Harts are left without an untold amount of contemporaneous evidence of ADI's operations prior to purchase by Sekisui.  Despite the fact that Sekisui has made a real effort to minimize the harm done by that destruction, it is unable to rebut the presumption of prejudice because an unknowable amount of ESI of Hart, Ayres, and potentially

---

[90]     *Id*. at 108 (quotation marks omitted).

[91]     *Id*. at 109 (quotation marks and alterations omitted).

[92]     *See Pension Committee*, 685 F. Supp. 2d at 467 ("Relevance and prejudice may be presumed when the spoliating party acted in bad faith or in a grossly negligent manner.  'Where a party destroys evidence in bad faith, that bad faith alone is sufficient circumstantial evidence from which a reasonable fact finder could conclude that the missing evidence was unfavorable to that party.'") (quoting *Residential Funding*, 306 F.3d at 109).

others, was permanently destroyed and remains irretrievable.  The Harts' inability to use the missing emails to attempt to prove "routine compliance" with FDA regulations may be as prejudicial to the Harts as depriving a party of access to a "smoking gun" document.  As such, I am left with the "definite and firm conviction that a mistake has been committed,"[93] that the destruction of Hart's and Ayres' ESI was willful and that prejudice is therefore presumed.  The Magistrate Judge's Decision denying the Harts' motion for sanctions was therefore "clearly erroneous."[94]  I emphasize that prejudice is only presumed when determining *whether* an adverse inference instruction will be given.  The jury may still determine that the Harts were not prejudiced by Sekisui's willful destruction of ESI and decline to draw any adverse inference.

### B.    Sanctions Imposed

Because I find it clearly erroneous and contrary to law, the Memorandum Decision is reversed insofar as it refused to impose sanctions on Sekisui for the destruction of ESI.  As discussed, Sekisui (1) willfully and permanently destroyed the ESI of at least two key players in this litigation; (2) failed to impose a litigation hold for more than a year after the duty to preserve arose, despite the fact that Sekisui is the Plaintiff in this action and, as such,

---

[93]    *In re Comverse*, 2007 WL 680779, at *2 (quotation marks omitted).

[94]    *Id*.

irrefutably knew that litigation could arise; and (3) failed to advise its IT vendor of

such litigation hold for nearly six months after (belatedly) imposing such hold.

Accordingly, the Harts' request for an adverse inference jury instruction is granted.

I will give the following jury charge:

> The Harts have shown that Sekisui destroyed relevant evidence.
> This is known as the "spoliation of evidence."
>
> Spoliation is the destruction of evidence or the failure to
> preserve property for another's use as evidence in pending or
> reasonably foreseeable litigation.  To demonstrate that
> spoliation occurred, several elements must be proven by a
> preponderance of the evidence:
>
> *First*, that relevant evidence was destroyed after the duty to
> preserve arose.
>
> *Second*, that the evidence lost would have been favorable to the
> Harts.
>
> As to the first element I instruct you, as a matter of law, that
> Sekisui failed to preserve relevant evidence after its duty to
> preserve arose.  This failure resulted from an employee's
> intentional directive given to ADI's information technology
> vendor to destroy the email files of  – at least – Richard Hart
> and Leigh Ayres.  Moreover, this failure resulted from Sekisui's
> gross negligence in performing its discovery obligations.  I
> direct you that I have already found as a matter of law that this
> lost evidence is relevant to the issues in this case.
>
> As to the second element, you may presume, if you so choose,
> that such lost evidence would have been favorable to the Harts.
> In deciding whether to adopt this presumption, you may take
> into account the egregiousness of the plaintiffs' conduct in
> failing to preserve the evidence.

Sekisui offered evidence that, although evidence was lost and it may have been relevant, nevertheless such evidence would not have been favorable to the Harts.

If you decline to presume that the lost evidence would have been favorable to the Harts, then your consideration of the lost evidence is at an end, and you will *not* draw any inference arising from the lost evidence.

However, if you decide to presume that the lost evidence would have been favorable to the Harts, you must next decide whether Sekisui rebutted that presumption.  If you determine that Sekisui *rebutted* the presumption that the lost evidence was favorable to the Harts, you will *not* draw any inference arising from the lost evidence against Sekisui.  If, on the other hand, you determine that Sekisui has *not rebutted* the presumption that the lost evidence was favorable to the Harts, you may draw an inference against Sekisui and in favor of the Harts – namely that the lost evidence would have been favorable to the Harts.

In addition, Sekisui is subject to monetary sanctions.  The Harts are entitled to an award of reasonable costs, including attorneys' fees, associated with bringing this motion.  The Harts shall submit a reasonable fee application to this Court for approval.

Sekisui's argument that the Harts were not prejudiced by the destruction of this ESI is not lost on this Court.  Nor is the fact that Sekisui has recovered thousands of Hart's and Ayres' emails and thousands of other non-email documents.  Sekisui remains free to make this argument to the jury and the jury remains free to accept that argument should it find, by a preponderance of the evidence, that the Harts were not prejudiced by Sekisui's failure to meet its

discovery obligations.

## VI.   CONCLUSION

In light of the foregoing, I reverse the Order of the Magistrate Judge declining to award sanctions for the destruction of ESI. The Harts' request for sanctions in the form of an adverse inference jury instruction is granted. The Clerk of the Court is directed to close this motion (Dkt. No. 43). A status conference is scheduled for Tuesday, August 26 at 4:30 p.m.

SO ORDERED:

Shira A. Scheindlin
U.S.D.J.

Dated:      New York, New York
            August 15, 2013

31

- Appearances -

**For Plaintiffs Sekisui America Corp.
and Sekisui Medical Co. Ltd.:**

Karen L. Hagberg, Esq.
Craig B. Whitney, Esq.
Morrison & Foerster LLP
1290 Avenue of the Americas
New York, NY 10104
(212) 468-8000

**For Defendants Richard Hart and Marie
Louise Trudel-Hart:**

Franklin B. Velie, Esq.
Jonathan G. Kortmansky, Esq.
Siobhan Briley, Esq.
Sullivan & Worcester LLP
1633 Broadway, 32nd Floor
New York, NY 10019
(212) 660-3000