

Sullivan & Worcester LLP
1633 Broadway
New York, NY 10019

T 212 660 3000
F 212 660 3001
www.sandw.com

October 22, 2013

**VIA e-FILE AND FACSIMILE**

Hon. Shira A. Scheindlin
United States District Judge
Southern District of New York
United States Courthouse
500 Pearl Street, Room 1620
New York, NY 10007

Re:     *Sekisui America Co., Ltd v. Hart*, No. 12-CIV-3479

Dear Judge Scheindlin:

We represent Defendants Richard Hart and Marie Louise Trudel-Hart (the "Harts") in the above-referenced action.  We write in response to Plaintiffs' letter to the Court dated October 18, 2013, in order to clarify certain issues which may be discussed at the conference.

As stated in our prior letter to the Court dated October 15, 2013, the parties met and conferred on Thursday, October 10, 2013[1] regarding additional spoliation issues.  During the meet and confer, the parties requested additional information from each other.  Plaintiffs suggested a further meet and confer, which the Harts did not believe was necessary.  The Harts sent an email following up on their requests for additional information.  Plaintiffs responded by email on Friday, October 11.  On Monday, October 14, around noon, the Harts sent another email, again requesting information.  The Harts waited 36 hours for a response, but none arrived (not even, "we are considering your requests and will revert back to you").  In accordance with the Court's instructions at the September 27, 2013 hearing, and in light of the pending deadlines for the motions *in limine* and the need to get these issues before the Court in a timely manner, in the early evening of October 15, the Harts informed the Court that there is still a dispute regarding spoliation.  *See* Sept. 27, 2013 Transcript ("Tr.") at 9:20-24.

Regarding Janet Silbert, at the October 10 meet and confer, the Harts told Plaintiffs they would provide additional search terms.  In light of the financial issues still remaining in the litigation and consistent with the Harts' previous document demands, the Harts followed up with a request for all Silbert documents from December 1, 2008 through December 31, 2009.  Plaintiffs offer no explanation for refusing to produce them.

Regarding Mr. Erb's amended report, the Harts did not decline to submit a joint letter.  Rather, the Harts informed Plaintiffs of the obvious:  they needed to review the amended report before submitting a joint letter regarding it.  The Harts did not receive the amended report until approximately 11 p.m. on Friday, October 18.

---

[1] Due to travel schedules, October 10 was the first date the parties could schedule a meet and confer.

Hon. Shira A. Scheindlin
October 22, 2013
Page 2

Regarding Joseph Azary, at the meet and confer the Harts stated that Plaintiffs had not produced any custodial emails during the key period, October 1, 2010 to March 1, 2011. These emails are critical because Mr. Azary was ADI's Director of Quality Assurance and Regulatory Affairs during the period in which Plaintiffs allege they uncovered and remediated significant FDA violations, and Plaintiffs identified him in their rule 26(a) disclosures and responses to interrogatories. Mr. Azary joined ADI on October 11, 2010, three days before Plaintiffs served their Claim Notice, and left ADI on June 6, 2012, a month after Plaintiffs filed their Complaint. All of Mr. Azary's ESI from the date he was hired until the date he left should have been preserved.

Plaintiffs now make two claims regarding Mr. Azary's missing ESI. First, they claim that until the Harts raised the issue, they had no idea that the documents they identified on October 10 in response to the Harts' statement at the meet and confer were calendar entries, not emails. Plaintiffs' failure to review their own production is no excuse.

Second, Plaintiffs claim that approximately 400 emails found in a server file identified as "old mail 3" are Joseph Azary's custodial documents, and that the Harts should have been able to determine they were custodial emails from the metadata referenced in their October 18, 2013 letter. This metadata, "File Server\Mailstores\old mail3.pst\old mail3\Joe Azary1," was not produced by Plaintiffs, and does not establish that the emails are Mr. Azary's custodial files.

Even assuming the "old mail 3" folder contains Mr. Azary's custodial emails, they are still insufficient. For the key period, that folder contains the following documents: **446** emails **from** Mr. Azary but **0** emails **to** Mr. Azary and **0** emails **copied** to Mr. Azary.

Moreover, Plaintiffs' total production of custodial emails for Mr. Azary raises additional issues. Plaintiffs produced only around 900 Azary custodial email documents. The remainder of the 4,763 Azary custodial documents produced by Plaintiffs are actually other persons' emails and documents stored in Mr. Azary's account. From other custodians' files, however, Plaintiffs produced 5,199 emails received by, sent or cc'd to Mr. Azary. In short, Mr. Azary's email account should have had a minimum of 4,300 additional emails. Moreover, the additional 4,300 emails in other custodians' accounts are still not a full production since that production necessarily would not include emails deleted by those other custodians in the course of their work, and emails between Mr. Azary and persons outside the company.

The logical inference to be drawn here is that Plaintiffs have destroyed Mr. Azary's emails, along with the other ESI the Court already had held that Plaintiffs intentionally destroyed. Plaintiffs point to a lack of a "smoking gun" document as the basis for their assertion that the ESI was not destroyed. However, the lack of a smoking gun pales in comparison to the heavy weight of evidence already presented by the Harts that Plaintiffs engaged in widespread destruction of ESI, including spoliation ordered by Plaintiffs' President, Kevin Morrissey, the officer in charge of preparing the case against the Harts.

As a result of Plaintiffs' systematic destruction of ESI, "the Harts are left without an untold amount of contemporaneous evidence of ADI's operations prior to purchase by Sekisui." Dkt. 52 at 27. Plaintiffs have failed and refused to provide information about their destruction of documents, and to this date have failed to reveal to the Court the extent of that destruction. Prior and repeated representations by Plaintiffs to the Court that the destruction was the act of a single employee, not known to management and mere negligence, have proved false. The Harts have a right to the requested ESI of Silbert and

Hon. Shira A. Scheindlin
October 22, 2013
Page 3

Azary, or at least a statement from Plaintiffs that they have no further ESI of those persons, and to know what was on the newly "discovered" server. Whether the Harts will move *in limine* for further sanctions—a matter which cannot be determined until the Harts receive at least the requested information—the Court should have complete information for the trial with respect to document destruction—or loss—as Plaintiffs' theory of liability depends on the fact that documents are missing.

Finally, the Harts are preparing a separate letter with respect to possible motions *in limine* regarding the two new expert reports received only two business days ago. In addition to a new Erb report (Plaintiffs' damages expert), Plaintiffs have also submitted a revised Kuehn report (Plaintiffs' FDA regulatory expert). We respectfully request leave to submit that letter Monday, October 28.

Respectfully submitted,

/s/

Franklin B. Velie
Partner

Direct line: 212-660-3037
fvelie@sandw.com