SULLIVAN & WORCESTER LLP
Franklin B. Velie
Jonathan G. Kortmansky
Siobhan Briley
1633 Broadway
32nd Floor
New York, NY 10019
(212) 660-3030
(212) 660-3001 (fax)

*Counsel for Defendants*
*Richard Hart and Marie Louise Trudel-Hart*

UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SEKISUI AMERICA CORPORATION and SEKISUI MEDICAL CO. LTD.,<br><br>    Plaintiffs,<br><br>    v.<br><br>RICHARD HART and MARIE LOUISE TRUDEL-HART,<br><br>    Defendants. | 12 Civ. 3479 (SAS) |
| RICHARD HART and MARIE LOUISE TRUDEL-HART,<br><br>    Plaintiffs,<br><br>    v.<br><br>SEKISUI AMERICA CORPORATION and SEKISUI MEDICAL CO. LTD.,<br><br>    Defendants. | 12 Civ. 3560 (SAS) |

## APPLICATION OF DEFENDANTS RICHARD HART AND MARIE LOUISE TRUDEL-HART FOR ATTORNEYS' FEES, COSTS, AND EXPENSES

Pursuant to this Court's direction in its August 15, 2013 Opinion and Order granting their motion for sanctions due to the destruction of ESI by Plaintiffs Sekisui America Corp. and Sekisui Medical Co., Ltd. ("Sekisui" or "Plaintiffs'), Defendants Richard Hart and Marie Louise Trudel-Hart (the "Harts") respectfully submit this application to recover reasonable and necessary fees and expenses incurred in preparing the motion for sanctions and this application.

I.      Worked Performed by Sullivan & Worcester LLP.

The investigation and motion practice regarding Plaintiffs' application for sanctions for spoliation took place from February 8, 2013 to August 15, 2013, the date on which the Court sanctioned Plaintiffs for destroying evidence. As shown below, Plaintiffs never came forward with competent evidence to explain how the ESI was destroyed or the extent or limit of such destruction. Instead, on numerous occasions, Plaintiffs falsely represented both the extent and the willful nature of the spoliation. Because of Plaintiffs' failure to come clean, the Harts were required, at great labor and expense, to attempt to uncover the facts.

Sullivan & Worcester LLP prepared this application for fees and costs between October 1, 2013 and December 10, 2013.

>   A.      Initial Investigation, Document Review, and Application to Court for Imposition of Sanctions:  $48,125.00.

On February 8, 2013, Plaintiffs notified the Harts that they had deleted Richard Hart's email folder and that they could not locate the email folders of Melissa Knight, Charles Roy, Janet Silbert, and Michael Smirnov. *See* Feb. 8, 2013 Sekisui Document Collection Information, attached as Exhibit ("Exh.") J to the Declaration of Siobhan Briley ("Briley Decl."), at 2. On March 8, in response to the Harts' request for additional information, Plaintiffs further disclosed that they were "unable to locate archived email folders for" Abha Malik, Chris Markline, Megan

1

Miller and Adrian Nugent.  *See* Mar. 8, 2013 Letter from Craig B. Whitney to Jonathan G. Kortmansky, attached as Exh. K to Briley Decl., at 3.

On March 22, 2013, counsel for the Harts requested a conference regarding Plaintiffs' destruction of evidence.  *See* Mar. 22, 2013 Hart Letter, attached as Exh. L to Briley Decl.[1] Plaintiffs responded to the March 22 letter on March 27, 2013, in which they represented that the destruction was the act of "a single former employee acting without direction from Sekisui" and not known to Sekisui's management.  Mar. 27, 2013 Sekisui Letter, attached as Exh. M to Briley Decl. at 1.

On March 28, 2013, the Court scheduled a conference for April 8, 2013.

Following Plaintiffs' disclosures, the Harts undertook an extensive review of the nearly 500,000 documents, which totaled two million pages, produced by Plaintiffs.  Through their investigation, the Harts unearthed inculpatory emails and documents demonstrating that the document destruction was ordered and approved by the company's President and Chief Operating Officer well after a litigation hold should have been in place to preserve such documents.

In addition to the extensive document review, attorney time for this period includes email correspondence and telephone communication between counsel on February 26, 2013; March 19, 2013; and April 5, 2013.  *See* Mar. 14, 2013 Invoice from Sullivan & Worcester LLP to the Harts ("S&W Invoice"), attached as Exh. C to Briley Decl.; Apr. 11, 2013 S&W Invoice, attached as Exh. D to Briley Decl.

---

[1] Letters from the Harts' counsel to the Court will be referred to as "[Date] Hart Letter," and letters from Sekisui's counsel to the Court will be referred to as "[Date] Sekisui Letter."

### B. Hearing Before Magistrate Judge Maas and Additional Briefing: $61,156.00.

On April 8, 2013, the Court referred the matter to Magistrate Judge Maas who held a hearing and heard oral argument. At the conclusion of the hearing, Magistrate Judge Maas ordered additional briefing.

Plaintiffs submitted a letter brief on April 15, 2013. *See* Apr. 15, 2013 Sekisui Letter, attached as <u>Exh. N</u> to Briley Decl. The Harts replied on April 19, 2013. *See* April 19, 2013 Hart Letter, attached as <u>Exh. O</u> to Briley Decl. Plaintiffs submitted a surreply on April 24, 2013, falsely asserting that Plaintiffs' deletion of Leigh Ayres' emails was an innocent mistake. *See* Apr. 24, 2013 Sekisui Letter, attached as <u>Exh. P</u> to Briley Decl., at 1. The Harts replied on April 25, 2013 to correct this misstatement. *See* Apr. 25, 2013 Hart Letter, attached as <u>Exh. Q</u> to Briley Decl. Work during this time period included preparation for and attendance at oral argument before Magistrate Judge Maas on April 8, review of the documents to refute the allegations in Plaintiffs' April 15 and 24 letters, and preparation of the Harts' letters to the court. *See* May 14, 2013 S&W Invoice, attached as <u>Exh. E</u> to Briley Decl.

### C. Appeal of Judge Maas's Memorandum Decision Denying Sanctions: $39,498.00.

On June 11, 2013, Magistrate Judge Maas entered a Memorandum Decision ("Decision") denying the Harts' motion for sanctions (Dkt. 44). On June 18, the Harts filed Objections to the Decision (Dkt. 45). Plaintiffs opposed the Harts' Objections on June 26, 2013 (Dkt. 46). *See* July 15, 2013 S&W Invoice, attached as <u>Exh. F</u> to Briley Decl. Work during this period included legal research and preparation of the Objections and Reply.

### D. Additional Submissions to Address Plaintiffs' Further Misrepresentations: $4,626.00.

On July 2, 2013, the Harts submitted a letter to this Court addressing Plaintiffs' Second Set of Interrogatories, which requested identification of documents showing ADI's[2] compliance with FDA regulations during the relevant period. *See* July 2, 2013 Hart Letter, attached as Exh. R to Briley Decl. Plaintiffs responded on July 8, 2013, falsely stating that Harts' had destroyed backup tapes. *See* July 8, 2013 Sekisui Letter, attached as Exh. S to Briley Decl. The Harts corrected this misrepresentation in a letter dated July 9, 2013. *See* July 9, 2013 Hart Letter, attached as Exh. T to Briley Decl. In that letter, the Harts also addressed Plaintiffs' three expert reports, all of which relied on the absence of documents to attempt to show liability and damages. *Id.*

### E. Preparation of This Fee Application: $9,625.00.

The Harts are entitled to recover fees and costs incurred in preparing this application. *See Himmel v. Country in New York LLC*, No. 09 Civ. 5073(LMM)(DF), 2011 WL 31045, at *3 (S.D.N.Y. Jan. 4, 2011) (citing *Weyant v. Okst*, 198 F.3d 311, 316 (2d Cir. 1999)). The Harts spent 25 hours preparing this fee application, for a total of $10,034.50. *See* Chart, Sullivan & Worcester LLP Attorney/Legal Professional Fees, attached as Exh. A to Briley Decl.; September 20, 2013 S&W Invoice, attached as Exh. H to Briley Decl.; November 12, 2013 S&W Invoice, attached as Exh. I to Briley Decl.

### F. Costs and Expenses: $3,786.71.

In addition to attorney time, the Harts incurred expenses in conjunction with their application for sanctions. These expenses totaled $3,786.71—$3,652.68 for legal research (Westlaw) and $134.03 for messenger and express mail costs. *See* Exh. B to Briley Decl.

---

[2] "ADI" refers to American Diagnostica, Inc.

4

**II.     The Fees and Expenses the Harts Incurred are Reasonable and Necessary.**

   **A.     Sullivan & Worcester LLP's Rates are Reasonable and Commensurate with Attorneys' Rates in this District.**

A reasonable attorney's fee is ordinarily the rate "prevailing in the [relevant] community for similar services by lawyers of reasonably comparable skill, experience, and reputation." *Farbotko v. Clinton Cnty. of New York*, 433 F.3d 204, 208 (2d Cir. 2005) (internal citation and quotation marks omitted); *see also Cohen v. W. Haven Bd. of Police Comm'rs*, 638 F.2d 496, 506 (2d Cir.1980) ("[F]ees that would be charged for similar work by attorneys of like skill in the area" are the "starting point for determination of a reasonable award."). The relevant legal community is the district in which the court sits. *Id.* (citing *Polk v. N.Y. State Dep't of Corr. Servs.*, 722 F.2d 23, 25 (2d Cir.1983)).

Sullivan & Worcester's ("S&W") rates are commensurate with the rates charged by similarly experienced and skilled attorneys in the Southern District of New York. S&W's rates are: Siobhan Briley, $385 per hour; Jonathan G. Kortmansky, $620 per hour; Franklin B. Velie, $885 per hour.[3] Mr. Velie, a graduate of Harvard Law School and former federal prosecutor, has been practicing law for forty-five years. He has tried more than forty cases. Mr. Kortmansky, a graduate of New York University School of Law, has been practicing for almost twenty years and has tried eight cases. Ms. Briley, a graduate of Georgetown University Law Center who clerked on the United States Court of Appeals for the Ninth Circuit, has been practicing for six years. The hourly rates billed by S&W are equal to or lower than the rates charged by firms in the Southern District of New York doing similar work. For instance, the rates charged by

---

[3] Three other S&W professionals also billed small amounts of time in connection with the Harts' motion for sanctions: Marie Christiansen, a law clerk, billed 17.8 hours at $160 per hour; Richard Lombardo, a paralegal, billed 11.8 hours at $290 per hour; and Michael Isotti, Director of Litigation Support, billed 2.1 hours at $315 per hour. *See* Exh. A to Briley Decl.

Plaintiffs' counsel, Morrison & Foerster LLP, for partners at Mr. Velie's level are close to or above $1000 per hour. *See* Valeo Partners Firm Profile for Morrison & Foerster LLP, attached as Exh. U to Briley Decl. Morrison & Foerster's rates for all partners range from $652.50 to $1240 per hour. *Id.* Their rates for associates range from $310 to $875 per hour. *Id.*

### B. The Hours Expended Were Reasonable Under the Circumstances, Given the Volume of Documents and Plaintiffs' Failure and Refusal to Come Clean.

None of the facts demonstrating the extent of Plaintiffs' spoliation would have come to light had the Harts not doggedly searched the 500,000 documents, which totaled two million pages, produced by Plaintiffs for the answers Plaintiffs failed or refused to provide. The Harts' searches were time-consuming—and, hence, expensive—and made necessary because Plaintiffs concealed and misrepresented the nature and extent of their conduct.[4]

#### 1. The Harts' Extensive Investigation Revealed the Extent and Nature of Plaintiffs' Document Destruction.

Plaintiffs claimed that they learned "for the first time during the course of discovery in this action that" Mr. Hart's email folder had been deleted. Exh. L to Briley Decl. at 2. The Harts' investigation showed that Plaintiffs and their information technology ("IT") vendor, Northeast Computer Services ("NCS"), learned no later than April 26, 2012— before the Complaint was filed—that Mr. Hart's emails had been deleted, and that counsel learned of this deletion no later than May 30, 2012—barely a month after the Complaint was filed. *See* Email

---

[4] Counsel for Plaintiffs had an affirmative duty not only to "investigate the whereabouts" of the missing ESI but "to notify the court and opposing counsel" promptly of the loss. *In re Kelsey*, Nos. 94-10415, 00-1034, 2001 34050736 at *4 (Bankr. D. Vt. Oct. 23, 2011); *see also* N.Y. Rule of Prof. Conduct 3.3; Steven W. Huang, *Spoliation of Evidence: Defining the Ethical Boundaries of Destroying Evidence*, Am. J. Trial Advoc. (1988) ("an attorney has an affirmative, ethical duty to disclose the spoliating act" when "he is representing a client before a tribunal"). As the Harts' investigation revealed, Plaintiffs and their counsel were aware of the spoliation when, or shortly after, the Complaint was filed but did not disclose the destruction until February 2013. When they did finally make this disclosure, both Plaintiffs and their counsel "conceal[ed] and camouflouge[d] material facts" pertinent to the spoliation. *Id.*

chain, dated Apr. 26, 2012 (SEK01235230-32), attached as Exh. V to Briley Decl.; email from Yoichi Tamenori to Toni Franchina dated May 30, 2012 (SEK01253682), attached as Exh. W to Briley Decl. The Harts' investigation further revealed that the spoliation continued until at least March 2012.[5]

Plaintiffs characterized their document destruction as an isolated incident, "the act of a lone former employee without the consent or knowledge of Sekisui's management." Exh. N to Briley Decl. at 2-3; *see also* Exh. M to Briley Decl. at 1. The Harts' investigation showed that the deletion of Mr. Hart's emails was deliberate, known to Plaintiffs' management, and accomplished only by overcoming the strenuous objection of their IT vendor. *See* Email from Dicey Taylor to Doug LeMasurier, dated Oct. 20, 2011 (SEK01146311-12), attached as Exh. X to Briley Decl.

Plaintiffs claimed that neither they nor NCS had "any record of the deletion of any other email folders." Exh. M to Briley Decl. at 2. They claimed that neither they nor NCS was "aware of any other missing" or destroyed ESI, information, or documents. *Id.* They stated that the Harts had "no basis to accuse [them] of the improper deletion of" other custodians' ESI. *Id.* The Harts' investigation showed that, in addition to deleting Mr. Hart's email folder, Plaintiffs deliberately obliterated Leigh Ayres' email documents—"totally into cyberspace[;] [d]o not archive"—and that Kevin Morrissey, Plaintiffs' President and Chief Operating Officer (who was also the individual in charge of building the case against the Harts) "approved this removal." Exh. X to Briley Decl.

---

[5] Plaintiffs' destruction of evidence may have continued until sometime after they filed their Complaint. As the Harts informed the Court at the October 24, 2013 conference, Plaintiffs' production of custodial documents for Joseph Azary was significantly lacking. Mr. Azary did not leave ADI until June 6, 2013—a month after Plaintiffs filed their Complaint.

7

Plaintiffs claimed that "there is no record of any backup tapes at ADI [during the relevant] time because Defendants did not maintain backup tapes of email files when they ran the company." Exh. S to Briley Decl. at 1 n.1. The Harts' investigation showed that, before NCS made any changes to ADI's backup procedures, ADI's "entire data was backed up on tapes." Email from Dicey Taylor to Leigh Ayres, dated Oct. 15, 2009 (SEK00985278), attached as Exh. Y to Briley Decl. Numerous other records establish that the Harts kept backup tapes of all company files, including emails, when they owned and operated ADI.[6] *See* Report, IQ of the Server Back-up System, May 5, 2006 (SEK00162344-48), attached as Exh. Z to Briley Decl.; Email from lennyc to Hugh Fryer regarding backup procedure, dated Feb. 18, 2009 (SEK00228742-43), attached as Exh. AA to Briley Decl.; Memorandum from Leigh Ayres to Steven Lesner dated June 13, 2005 (SEK01891018-19), attached as Exh. BB to Briley Decl.; Email from lennyc to ADI employees regarding Backups, dated Feb. 7, 2009 (SEK00228706), attached as Exh. CC to Briley Decl.; Email from lennyc to ADI employees regarding Backups with attachment, dated Feb. 10, 2009 (SEK00625253-54), attached as Exh. DD to Briley Decl.[7]

Plaintiffs also falsely represented the number of custodial files they produced for Richard Hart. First, they claimed that they had "recovered approximately 30,000 emails of Richard Hart." Exh. L to Briley Decl. at 3. Two weeks later, they claimed that they had "produced around 36,000 emails that belonged to or were either to or from or that he received, Richard Hart[.]" Transcript of April 8, 2013 Hearing before Magistrate Judge Maas, attached as Exh. GG to Briley Decl. at 4:22-5:4. On April 15, 2013, they claimed that they had "produced over

---

[6] In addition, Ms. Trudel-Hart testified at her deposition that ADI backed up all its data, that she kept the backup tapes in a fireproof safe offsite, and that she gave those tapes to Ms. Taylor after Plaintiffs acquired ADI. *See* Transcript of July 25, 2013 Deposition of Marie Louise Trudel-Hart, attached as Exh. EE to Briley Decl., at 106:22-107:14.

[7] The Harts had not found these documents on July 9, 2013, when they responded to Plaintiffs' July 8, 2013 letter.

36,000 responsive emails to or from Mr. Hart[.]" Exh. M to Briley Decl. at 2. And on June 25, 2013, they claimed that they had "located and produced over 36,000 *custodial files* of Richard Hart[.]" Plaintiffs' Response to Defendants' Objections, Dkt. 46, at 4 (emphasis added). None of these representations was true. The Harts' investigation revealed that Plaintiffs produced only 5,893 custodial files for Mr. Hart. This number included duplicates, junk emails, and unreadable files.

### 2. The Harts Were Required to Conduct Further Investigation Due to Plaintiffs' Attempts to Capitalize on their Destruction of Evidence.

On July 1, 2013, Plaintiffs served their Second Set of Interrogatories, which requested that the Harts identify all documents supporting the Harts' contention that ADI was in compliance with FDA regulations prior to the sale. *See* Plaintiffs' Second Set of Interrogatories, attached as Exh. EE to Briley Decl. Documents demonstrating ADI's compliance with FDA regulations would have been found in Leigh Ayres' and Richard Hart's ESI. Ms. Ayres' and Mr. Hart's ESI undoubtedly would have shown compliance in view of the fact that ADI passed numerous audits during the relevant period. On July 3, 2013, Plaintiffs served three affirmative expert reports. Each is based on the *absence* of documents to attempt to show liability and damages. Plaintiffs' tactics required the Harts to further investigate Plaintiffs' representations and furnish additional information to this Court. *See* Exhs. Q and S to Briley Decl.

Plaintiffs' conduct caused protracted litigation solely in order to establish that, contrary to their representations, Plaintiffs knew about the document destruction from the outset but failed to disclose the events regarding the spoliation. To this day, Plaintiffs have not explained by competent evidence the nature or extent of their destruction of evidence. Nor have they explained or even expressed regret for their misrepresentations to this Court.

9

    **C.**    **The Expenses and Costs Were Reasonably Incurred.**

The expenses and costs incurred for Westlaw research and deliveries to the Court were reasonable. As shown, the Harts' multiple submissions to the Court were required to correct Plaintiffs' repeated concealment and misrepresentation of the extent and nature of their conduct, and their misrepresentations to this Court and to the Harts. S&W conducted standard legal research on Westlaw to support the Harts' arguments.

## CONCLUSION

For the foregoing reasons, the Harts respectfully request that this Court grant their application for reimbursement of $163,030.00 for attorneys fees and $3,786.71 for costs and expenses, for a total of $166,816.71.

Dated: New York, New York  
       December 11, 2013

SULLIVAN & WORCESTER LLP

By: /s/ Franklin B. Velie  
    Franklin B. Velie  
    Jonathan G. Kortmansky  
    Siobhan Briley  
1633 Broadway, 32nd Floor  
New York, NY 10019  
(212) 660-3000  
(212) 660-3001 (fax)

*Counsel for Defendants*  
*Richard Hart and Marie Louise Trudel-Hart*